## CITIZENS BANKING COMPANY *v.* RAVENNA NATIONAL BANK.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 288.   Argued March 16, 1914.—Decided June 8, 1914.

The failure by an insolvent judgment debtor and for a period of one day less than four months after the levy of an execution upon his real estate, to vacate or discharge such a levy, is not a final disposition of the property affected by the levy under the provisions of § 3a (3) of the Bankruptcy Act of 1898.

An insolvent debtor does not commit an act of bankruptcy rendering him subject to involuntary adjudication as a bankrupt under the Bankruptcy Act of 1898 merely by inaction for the period of four months after levy of an execution upon his real estate.

All of the three elements specified in § 3a (3) of the Bankruptcy Act of 1898 must be present in order to constitute an act of bankruptcy within the meaning of that provision.

Questions certified, 202 Fed. Rep. 892, answered in the negative.

THE facts, which involve the construction of § 3a of the Bankruptcy Act of 1898, are stated in the opinion.

*Mr. G. Ray Craig,* with whom *Mr. Edward H. Rhoades, Jr.,* and *Mr. John D. Rhoades* were on the brief, for Citizens Banking Company:

The failure by an insolvent judgment debtor for a period of one day less than four months after the levy of an execution upon his real estate to vacate or discharge such levy is not a "final disposition of the property" affected by such levy, within the provisions of § 3a (3) of the Bankruptcy Act.

An insolvent debtor does not commit an act of bankruptcy merely by inaction for a period of four months after the levy of an execution upon his real estate.

In support of these contentions, see *Re Baker-Ricketson Co.,* 97 Fed. Rep. 489; *Bogen* v. *Protter,* 129 Fed. Rep. 533; *Re Brightman,* 4 Fed. Cas. 136; *Colcord* v. *Fletcher,* 50 Maine, 398; *Re Empire Bedstead Co.,* 98 Fed. Rep. 981; *French* v. *Spencer,* 21 How. 228; *Re Heller,* 9 Fed. Rep. 373; *Jenney* v. *Walker,* 80 Oh. St. 100; *Metcalf* v. *Barker,* 187 U. S. 165; *Re National Hotel Co.,* 138 Fed. Rep. 947; *Poor* v. *Considine,* 6 Wall. 458; *Re Rome Planing Mill,* 96 Fed. Rep. 813; *Ex parte Russell,* 13 Wall. 664; *Re Seaboard Casting Co.,* 124 Fed. Rep. 75; *Thornley* v. *United States,* 113 U. S. 310; *Re Truitt,* 203 Fed. Rep. 550; *Re Vastebinder,* 126 Fed. Rep. 417; *Re Vetterman,* 135 Fed. Rep. 443; *Wilson* v. *City Bank,* 17 Wall. 473; *Wilson* v. *Nelson,*

183 U. S. 191; *Re Windt*, 177 Fed. Rep. 584; *Yturbide* v. *United States*, 22 How. 290.

*Mr. A. T. Brewer* for Ravenna National Bank:

The failure by an insolvent judgment debtor for a period of one day less than four months after the levy of an execution upon his real estate, to vacate or discharge such levy, is a "final disposition of the property," affected by the levy, under the provisions of § 3a (3) of the Bankruptcy Act of 1898, making the debtor subject to involuntary adjudication as a bankrupt under said § 3a (3), and it is not essential that the debtor shall do anything at all.

It is assumed that the judgment debtor, being insolvent, the levy constitutes a lien and works a preference. *Wilson* v. *Nelson*, 183 U. S. 191; *Bogen* v. *Protter*, 129 Fed. Rep. 533; *Folger* v. *Putnam*, 194 Fed. Rep. 793; *In re Tupper*, 163 Fed. Rep. 766.

The judgment levied on the property of Curtis on April 9, 1908, created a lien thereon in favor of the Citizens Bank of Norwalk, the judgment creditor, the judgment debtor being then insolvent.

This lien existed for a period one day less than four months, to-wit, until August 10, 1908, when the petition in involuntary bankruptcy was filed by the Ravenna National Bank, being so filed within four months, as August 9th was Sunday, these facts constituting a "final disposition" of said property by the bankrupt to the extent of the judgment.

To establish the bankruptcy through the foregoing facts it was not necessary for Cora M. Curtis to do anything. Her act of bankruptcy was therefore complete in all respects when the involuntary petition was filed and the adjudication by the district judge was fully authorized.

She permitted the judgment.

She was then insolvent.

The judgment worked a preference.

She did nothing to vacate it.

Except in bankruptcy the judgment was unassailable.

The involuntary petition alone prevented the consummation of the preference and the defeat of the main purpose of the Bankruptcy Law in securing an equal distribution among all creditors of the property of insolvent persons.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

Upon a petition filed in the District Court for the Northern District of Ohio by one of her creditors, Cora M. Curtis was adjudged a bankrupt. In addition to matters not requiring notice, the petition charged that within four months next preceding its filing the respondent committed an act of bankruptcy, in that (a), while insolvent, she suffered and permitted the Citizens Banking Company to recover a judgment against her for $1,598.78 and costs, in the Common Pleas Court of Erie County, Ohio, and to have an execution issued under the judgment and levied on real estate belonging to her, whereby the company obtained a preference over her other creditors, and (b) at the time of the filing of the petition, which was one day less than four months after the levy of the execution, she had not vacated or discharged the levy and resulting preference.

The company appeared in the bankruptcy proceeding and challenged the petition on the ground that it disclosed no act of bankruptcy, but the court, deeming that such an act was charged, overruled the objection, and, there being no denial of the facts stated in the petition, adjudged the respondent a bankrupt. The company appealed to the Circuit Court of Appeals, and that court, having briefly reviewed the opposing views touching the point in controversy (202 Fed. Rep. 892), certified the case here, with a request that instruction be given on the following questions:

"(1) Whether the failure by an insolvent judgment

debtor, and for a period of one day less than four months after the levy of an execution upon his real estate, to vacate or discharge such levy, is a 'final disposition of the property' affected by such levy, under the provisions of section 3a (3) of the Bankruptcy Act of 1898.

"(2) Whether an insolvent debtor commits an act of bankruptcy rendering him subject to involuntary adjudication as a bankrupt, under the Bankruptcy Act of 1898, merely by inaction for the period of four months after the levy of an execution upon his real estate."

It will be observed that no reference is made to an accomplished or impending disposal of the property in virtue of the levy, although the mode of disposal prescribed by the local law is by advertisement and sale. 2 Bates' Ann. Ohio Statutes, §§ 5381, 5393.

The answers to the questions propounded turn upon the true construction of § 3a (3) of the Bankruptcy Act, which declares:

"Acts of bankruptcy by a person shall consist of his having . . . (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference." Chapter 541, 30 Stat. 544, 546.

Looking at the terms of this provision, it is manifest that the act of bankruptcy which it defines consists of three elements. The first is the insolvency of the debtor, the second is suffering or permitting a creditor to obtain a preference through legal proceedings, that is, to acquire a lien upon property of the debtor by means of a judgment, attachment, execution or kindred proceeding, the enforcement of which will enable the creditor to collect a greater percentage of his claim than other creditors of the same class, and the third is the failure of the debtor to vacate or discharge the lien and resulting preference five days

before a sale or final disposition of any property affected. Only through the combination of the three elements is the act of bankruptcy committed. Insolvency alone does not suffice, nor is it enough that it be coupled with suffering or permitting a creditor to obtain a preference by legal proceedings. The third element must also be present, else there is no act of bankruptcy within the meaning of this provision. All this is freely conceded by counsel for the petitioning creditor.

The questions propounded assume the existence of the first two elements and are intended to elicit instruction respecting the proper interpretation of the clause describing the third, namely, "and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference." It is to this point that counsel have addressed their arguments.

Without any doubt this clause shows that the debtor is to have until five days before an approaching or impending event within which to vacate or discharge the lien out of which the preference arises. What, then, is the event which he is required to anticipate? The statute answers, "a sale or final disposition of any property affected by such preference." As these words are part of a provision dealing with liens obtained through legal proceedings, and as the enforcement of such a lien usually consists in selling some or all of the property affected and applying the proceeds to the creditor's demand, it seems quite plain that it is to such a sale that the clause refers. And as there are instances in which the property affected does not require to be sold, as when it is money seized upon execution or attachment or reached by garnishment,[1] it seems equally

---

[1] See *Turner* v. *Fendall*, 1 Cranch, 117, 133; *Sheldon* v. *Root*, 16 Pick. 567; *Crane* v. *Freese*, 16 N. J. L. 305; *Green* v. *Palmer*, 15 California, 411, 418; 2 Bates' Ann. Ohio Statutes, §§ 5374, 5383, 5469, 5470, 5483, 5531, 5548, 5555.

plain that the words "or final disposition" are intended
to include the act whereby the debtor's title is passed to
another when a sale is not required. No doubt, the terms
"sale or final disposition," explained as they are by the
context, are comprehensive of every act of disposal,
whether by sale or otherwise, which operates as an enforce-
ment of the lien or preference.

But we do not perceive anything in the clause which
suggests that the time when the lien is obtained has any
bearing upon when the property must be freed from it
to avoid an act of bankruptcy. On the contrary, the
natural and plain import of the language employed is that
it will suffice if the lien is lifted five days before a sale or
final disposition of any of the property affected. This is
the only point of time that is mentioned, and the implica-
tion is that it is intended to be controlling.

To enforce a different conclusion counsel for the peti-
tioning creditor virtually contends that the clause has
the same meaning as if it read "and having failed to vacate
or discharge the preference at least five days before a sale
or final disposition of any of the property affected, or at
most not later than five days before the expiration of four
months after the lien was obtained." But we think such
a meaning cannot be ascribed to it without rewriting it,
and that we cannot do. The contention puts into it an
alternative which is not there, either in terms or by fair
implication, and to which Congress has not given assent.
Indeed, it appears that in the early stages of its enactment
the bankruptcy bill contained a provision giving the same
effect to a failure to discharge the lien within a prescribed
period after it attached as to a failure to discharge it within
a designated number of days before an intended sale, and
that during the final consideration of the bill that provi-
sion was eliminated and the one now before us was
adopted. This, of course, lends strength to the implication
otherwise arising that the clause names the sole test of

when the lien must be vacated or discharged to avoid an act of bankruptcy.

The contention to the contrary is sought to be sustained by a reference to §§ 3b, 67c and 67f. But we perceive nothing in those sections to disturb the plain meaning of § 3a (3). It defines a particular act of bankruptcy and purports to be complete in itself, as do other subsections defining other acts of bankruptcy. Section 3b deals with the time for filing petitions in bankruptcy and limits it to four months after the act of bankruptcy is committed. It says nothing about what constitutes an act of bankruptcy, but treats that as elsewhere adequately defined. Sections 67c and 67f deal with the retrospective effect of adjudications in bankruptcy, the former declaring that certain liens obtained in suits begun within four months before the filing of the petition shall be dissolved by the adjudication, and the latter that certain levies, judgments, attachments and other liens obtained through legal proceedings within the same period shall become null and void upon the adjudication. Both assume that the adjudication will be grounded upon a sufficient act of bankruptcy as elsewhere defined, and give to every adjudication the same effect upon the liens described whether it be grounded upon one act of bankruptcy or another. And what is more in point, there is no conflict between § 3a (3) and the sections indicated. All can be given full effect according to their natural import without any semblance of interference between § 3a (3) and the others.

But it is said that unless § 3a (3) be held to require the extinguishment of the lien before the expiration of four months from the time it was obtained the result will be that in some instances the lien will not be dissolved or rendered null through the operation of §§ 67c and 67f, because occasionally the full four months will intervene before an act of bankruptcy is committed and therefore before a petition can be filed. Conceding that this is so,

it proves nothing more than what is true of all liens obtained through legal proceedings more than four months prior to the filing of the petition. And while it may be true, as is suggested, that if the debtor is not restricted to less than four months within which to extinguish the lien there will be instances in which general creditors will be affected disadvantageously, it must be reflected that there also will be instances in which an honest and struggling debtor will be able to extinguish the lien the requisite number of days before a sale or final disposition of any of the property affected and thereby to avoid bankruptcy, without injury to any of his creditors. But with this we are not concerned. The advantages and disadvantages have been balanced by Congress, and its will has been expressed in terms which are plain and therefore controlling.

Lastly it is said that the term "final disposition" is not used in the sense hereinbefore indicated, but as denoting the status which a lien acquires through the lapse of four months before the filing of a petition in bankruptcy. This is practically a reiteration of the contention already noticed, but probably is intended to present it from a different angle. It overlooks, as we think, the influence which rightly must be given to the context, and also the manifest inaptness of the term to express the thought suggested. When one speaks of a sale or *final* disposition of property he means by final disposition an act having substantially the effect of a sale—a transfer of ownership and control from one to another—and especially is this true when he is referring to a sale or final disposition in the enforcement of a lien. We regard it as entirely clear that the term is so used in this instance, and that it signifies an affirmative act of disposal, not a mere lapse of time which leaves the lien intact and still requiring enforcement. To illustrate, let us take the instance of a provisional attachment of real property, which the creditor is not entitled to enforce unless he sustains the demand which is the sub-

ject of the principal suit; and let us suppose that the debtor defends against the demand, and that the suit is pending and undetermined four months after the levy. Of course, an adjudication in bankruptcy upon a petition filed thereafter would not disturb the attachment. But could it be said that the property attached was finally disposed of at the end of the four months? An affirmative answer seems quite inadmissible.

We conclude that both of the questions propounded by the Circuit Court of Appeals should be resolved in the negative.

As shown by the reported cases, some diversity of opinion has arisen in other Federal courts in disposing of similar questions (*In re Rome Planing Mill*, 96 Fed. Rep. 812, 815; *In re Vastbinder*, 126 Fed. Rep. 417, 420; *In re Tupper*, 163 Fed. Rep. 766, 770; *In re Windt*, 177 Fed. Rep. 584, 586; *In re Crafts-Riordon Shoe Co.*, 185 Fed. Rep. 931, 934; *Folger* v. *Putnam*, 194 Fed. Rep. 793, 797; *In re Truitt*, 203 Fed. Rep. 550, 554), and so we deem it well to observe that the conclusion here stated has been reached only after full consideration of those cases.

*Questions answered "No."*