### In re IRISH.

(District Court, E. D. Pennsylvania. December 22, 1916.)

#### No. 5611.

BANKRUPTCY ⚖=59—"ACTS OF BANKRUPTCY"—FRAUDULENT CONVEYANCE OF TRANSFER—JUDGMENT.

An insolvent debtor who, intending to transfer real estate out of the reach of his creditors and to prefer one creditor, confessed a judgment or was a party to securing a judgment against himself by default for a sum in excess of the value of the property on which execution was withheld more than four months after the entry of the judgment has committed an act of bankruptcy under Bankruptcy Act July 1, 1898, c. 541, § 3a, cl. 1, 30 Stat. 546 (Comp. St. 1913, § 9587), making a conveyance with intent to defraud creditors an act of bankruptcy, and clause 2 making a transfer, while insolvent, of any property to a creditor with intent to prefer such creditor an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 81, 82.; Dec. Dig. ⚖=59.

For other definitions, see Words and Phrases, First and Second Series, Act of Bankruptcy.]

In Bankruptcy. Involuntary proceedings in bankruptcy against Ned Irish. On motion to dismiss the amended petition. Motion denied.

See, also, 228 Fed. 573.

Evans, High, Dettra & Swartz, of Norristown, Pa., for petitioning creditors.

G. Herbert Jenkins, of Philadelphia, Pa., for alleged bankrupt.

DICKINSON, District Judge. Aside from the mere formality of statement in the petition, the real question involved in this motion can be most clearly presented in two propositions. One is whether an insolvent debtor, who is the owner of real estate which he desires and intends to convey or transfer out of the reach of creditors, and intends further to defraud creditors or to prefer one of them, and for the accomplishment of this purpose confesses a judgment for a sum in ex-

cess of the value of the property, execution upon which judgment, however, is withheld until after four months from the entry of the judgment, has committed an act of bankruptcy under clauses 1 or 2 of section 3a. The other proposition is whether such act is a cause of bankruptcy, if, instead of confessing the judgment, the insolvent debtor, for the same purpose and intent as before stated, is a party to the bringing of an action against himself and the entry of a like judgment by default.

The substantial question above stated is formally raised by the petition in this case. It avers an act of bankruptcy in the language of clause 1 and also in the language of clause 2, but the positive averments thus made are qualified by the statement that the conveyance or transfer charged to have been made was made through the expedient or device of the recovery of a judgment such as outlined above. The real question is, we think, involved in the first proposition, because we are of opinion that there is no distinction between the judgments entered in the different ways mentioned.

The weight of the argument in favor of the motion to dismiss is felt in the expression of the thought that Congress has made a distinction between the confession of a judgment and the conveyance or transfer of property similar to that which was recognized by the courts of Pennsylvania under the acts regulating assignments for the benefit of creditors. The distinction is between a conveyance or other transfer through the operation of which title to property directly passes and the confession of a judgment through an execution upon which title to property may indirectly but eventually pass. Based upon this distinction, the courts of Pennsylvania held that a judgment confessed to a trustee for creditors was not an assignment for the benefit of creditors, notwithstanding the fact that the entry of the judgment was immediately followed by the issuing of an execution through and by which the property of the defendant, real or personal, was sold and transferred.

The argument has further weight in the attitude of the professional mind on the subject of confessed judgments unaccompanied with execution, and in the consideration that the mere entry of a judgment left creditors free to pursue all lawful remedies which were theirs. There is also room for the thought that the bankruptcy laws embodied the policy of Congress not to force bankruptcy proceedings upon a struggling debtor unless certain clearly defined causes of bankruptcy existed, and that the thought of Congress was that it would be unwise to make the mere entry of a judgment an act of bankruptcy, because this would hamper needy defendants in getting aid through whatever credit they still retained.

The weight of the argument addressed to us on the other side resides in this: If the real intent and purpose of a debtor was the fraudulent one of withdrawing property from the reach of his creditors, or the unlawful one of securing payment to one creditor to the prejudice of others, and the means through and by which this is sought to be accomplished is, in substance and reality, a conveyance or transfer of his property, it is an intolerable thought that the law will sanction the ac-

complishment of this fraudulent or unlawful purpose out of deference to the mere form which the transaction may be made to assume. Each view is presented through arguments of almost equal strength, and the scales of judgment are left almost on a balance. The device to which this alleged bankrupt has had resort (if his purpose was as averred by the petitioning creditors) is so ancient and so common that at first blush it seems strange that the question has not been before raised and decided. Indeed the very common practice of failing debtors, after they had passed the verge of insolvency, to save their property to themselves or members of their families, or to prefer a friendly creditor through the device of a confessed judgment, has always been advanced by advocates of a bankrupt law as in itself a sufficient reason for the enactment of such a law. The change from a confessed judgment to a recovered judgment is but a step.

The fact that the specific question now raised has never before been definitely ruled is accounted for, on the one hand, by the assertion that no creditors before these petitioners have ever thought the question worth raising, and, on the other, by the conflicting assertion that no debtor has before thought that such a device as that here resorted to would be effective. It has, of course, been frequently ruled that the mere confession of a judgment without an accompanying execution is not a cause of bankruptcy within the meaning of clause 3. This is because of the very terms of that clause. It has indeed, with the present acquiescence of the petitioning creditors, been so ruled in this very case. In re Irish (D. C.) 228 Fed. 573.

All considerations arising under clause 3 have been laid at rest for us by the ruling in Citizens' Bank v. Ravenna Bank, 234 U. S. 360, 34 Sup. Ct. 806, 58 L. Ed. 1352, in which the conflicting views of policy which were settled by Congress are most clearly set forth. It is manifest, however, that the ruling in that case was confined to the quoted section of the act, and leaves untouched (otherwise than by implication) what constitutes a cause of bankruptcy under either clause 1 or clause 2. In order to bring the discussion down to the specific question now raised, it may be observed that the acts of Congress enumerate five distinct separate and different causes of bankruptcy. It may therefore be fairly assumed that Congress had in mind five different things which an alleged bankrupt might have done. Those designated as 4 and 5 we may dismiss as not here involved. The first condemns as a cause of bankruptcy the actual fraud of an insolvent debtor who attempts to put his property beyond the reach of his creditors by any conveyance, transfer, concealment, or removal, or by permitting such concealment or removal by others. The second visits a like condemnation upon the unlawful act of transferring property with the intent to prefer a creditor, although the debt be an honest one and there is no fraud in fact. The third condemnation is aimed at the act (otherwise lawful) of permitting a creditor to secure a judgment and proceed to a sale, coupled with the further negative act of not having prevented such creditor from procuring a preference. It will be observed that the thing which is declared to be a cause of bankruptcy is again one which may come about, not only without any intent on the part of the

debtor to either commit actual fraud or to permit an unlawful prefer-
ence, but may be something which he is powerless to prevent.

This brings us to the real broad question now presented of whether
there may be another thing done by an insolvent, which Congress has
not made a cause of bankruptcy, or whether this is included in clauses
1 or 2, to wit, confessing or permitting a judgment with the actual in-
tent to defraud creditors, or with the unlawful intent to prefer a cred-
itor through having the judgment ripen into a transfer of property.

It may be assumed that Congress meant the bankruptcy laws to em-
brace all proper causes of bankruptcy, and, further, that it had in mind
the device of entering judgments in order to defraud creditors or to
give a preference, and also the practice of debtors who were struggling
against insolvency to resort to confessed judgments as an honest means
of raising money, as well as the possibility that a judgment might be
entered against such a debtor by an uneasy creditor.

All these considerations constitute the balancing of advantages and
disadvantages by Congress before declaring its will, to which reference
is made in the opinion in the Citizens' Bank v. Ravenna Bank Case.
That of which we are in search is this declared will. The thought is
readily grasped that it was the purpose of Congress to include all such
fraudulent and unlawful judgments in clauses 1 and 2. The thought
is as easily grasped that Congress did not mean to interfere with needy
or unfortunate debtors against whom judgments not followed by ex-
ecutions might be entered, and that they left this means of avoiding
bankruptcy open to them, notwithstanding the use of such judgments
might be abused by debtors actuated by a fraudulent or unlawful pur-
pose.

A review of the authorities which the industry of counsel has
brought to our attention may not be out of place, even at the cost of
lengthening an already overlong opinion.

We pass the case of Wilson v. Bank, 84 U. S. (17 Wall.) 473, 21 L.
Ed. 723, with the comment that it was ruled upon the question of the
sufficiency of the evidence to support a finding of unlawful intent in a
proceeding to avoid an alleged preference. The phrases quoted by
counsel for the alleged bankrupt merely voice the two thoughts that
there is nothing wrong in a debtor not resisting the collection of a just
debt, nor can any inference of fraud be drawn from the mere fact that
he interposed no defense to such an action.

Sleek v. Turner, 76 Pa. 142, and Louchheim v. Henzey, 86 Pa. 350,
are to the same effect that "mere passive nonresistance of the defend-
ant to the recovery of a judgment" for an honest debt will not justify
(of itself) an inference of actual fraud or unlawful intent.

In considering the language of an opinion, we cannot be too often
reminded that it must be read in the light of the subject-matter to
which it relates. Some provisions of the acts of Congress discussed
deal with the actual intent and purpose of the debtor or creditor, oth-
ers denounce a particular act as unlawful because against the declared
policy of the law, irrespective of the intent of the parties, or the oth-
erwise innocent character of the act. The importance of this distinc-
tion is pointed out in the majority opinion in Wilson v. Nelson, 183 U.

S. 191, 22 Sup. Ct. 74, 46 L. Ed. 147, wherein it is held that intent enters into clauses 1 and 2, but has no place in clause 3, which deals wholly with results.

It may be further observed that the broad question with which we are now dealing does not concern itself with the lexical meaning of the words employed, because Congress has carefully defined the sense in which the words are used. Nor is more than very general aid afforded by adjudged cases dealing with a different state of facts.

Pirie v. Chicago Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171, for instance, merely rules that payment of moneys is a transfer of property within the meaning of the preference provisions of the act.

In the Nusbaum Case (D. C.) 18 Am. Bankr. Rep. 598, 152 Fed. 835, there was both a judgment and an execution sale. These were held to be a transfer within the meaning of the act, and to constitute a cause of bankruptcy under clause 1, and also clause 2, as well as clause 3, there being also present the actual intent to defraud and to prefer.

The Tupper Case (D. C.) 20 Am. Bankr. Rep. 824, 163 Fed. 766, is of value to us in the respect of the expression of the opinion that the omission of an averment of intent to defraud prevented the judgment there operating as a cause of bankruptcy under clause 1, and because of the implication that if such intent had been averred, a cause of bankruptcy would have been set forth.

In re Truitt (D. C.) 29 Am. Bankr. Rep. 570, 203 Fed. 550, approaches more closely to a ruling of the question before us. It rules the confession of a judgment to have been a transfer of the real estate of the defendant within the meaning of the bankruptcy law, and the averment of this fact, together with the averment of an intent to prefer, to have been the setting forth of a cause of bankruptcy under clause 2. There is involved as an essential ingredient the positive act of the debtor in the procurement of the judgment. The ruling under the facts there present covers a confessed judgment, but not an adverse one, and because of some expressions in the opinion carries the implication that the ruling would not apply to any other than confessed judgments.

Another case (without the implication) to the same effect is supplied by In re Musgrove Mining Co. (D. C.) 37 Am. Bankr. Rep. 628, 234 Fed. 99 (November, 1916, advance sheets). Judgments there had been confessed, but no executions had issued. It was conceded that no cause of bankruptcy under clause 3 existed. The judgments, however, were held to be transfers under clause 2, the averment appearing of an intent to prefer.

The trend of judicial opinion is therefore with the petitioners upon the main proposition advanced by them that a lien upon real estate, through which a sale can be effected, is a transfer within the meaning of clauses 1 and 2. We by no means regard the question as free from doubt, nor have we found the reasoning upon which the rulings were based to be in all respects convincing. They have, however, been made, and have so far been uniform. It seems, therefore, to us to be

the wiser course to follow them until some commanding voice directs otherwise.

The ruling now made may properly be said to be an advance upon those cited, as in a sense it is. The space between the two classes of cases is, we think, well bridged by the averments of the petition. The act is directly charged to be the act of the alleged bankrupt. It is (according to the authorities quoted) a transfer. This transfer is averred to have been the act of the defendant in the judgment. We see in this respect no difference between the case of one debtor who, in order to defraud his creditors, appends his name to a judgment note upon which judgment is entered by the prothonotary and another who, in furtherance of a like fraudulent purpose, appends his signature to a plain promissory note, upon which is brought an action in which judgment is likewise recovered. The acts differ, of course, in form, but in intent and purpose and final results they are the same. The intent may be better concealed, and therefore more difficult to prove, in the one case than in the other, but we are dealing now with what the petitioners have averred, not with what they will be able to prove, and the act here is averred to have been the affirmative act of the defendant as positively as it could have been had the judgment been confessed. To hold there is no difference between a judgment and a transfer, if each was for an unlawful purpose, and yet balk at ignoring the difference in the mere form of the judgment, savors too much of straining at gnats while swallowing camels.

The motion to dismiss is denied.