holds the property which is the subject of transfer, cannot allow the transfer to be *effectuated through him as the medium, without payment of the tax by the transferee,* except on pain of *his* (the trustee's) personal liability for that *default.* It means that the liability of the transferee, who *receives* the transfer without payment of the tax (which as the Supreme Court says "attaches" to his *person*), shall continue; that is, remain unimpaired. The statute *conditioned* the *delivery* and the *receipt of the subject-matter* of transfer upon, and subject to, the *payment* of the tax *on the transfer,* as a means of and assurance *for* payment. And that is nothing more than imposing on the executor the *duty of delivery only* on compliance with the condition. *But it does not impose the transfer tax on him,* with *liberty* to pay it out of *any* property in hand, regardless of the latter being the subject-matter of transfer *elsewhere.* It assumes that the tax has an incidence, *not* against the executor, but it obligates him not to ignore the real incidence. Therefore it makes little difference whether failure on his part *creates a personal* liability. In that sense, every failure of a trustee to perform a trust duty may be "personal."

Therefore the state, in this case, did not, could not, ignore *the* transfers reflected in the will *to* the named transferees, and thereupon treat the executor or trustee as a sort of initial transferee *of the gross estate,* then figure up the taxes on transfers in severalty, and seek to *impose* their *aggregate* on the executor or trustee, with right or obligation on his part to pay such aggregate out of any gross estate in his hands. On the contrary, as indicated, it proceeded to ascertain the transfers, the transferees, "in trust or otherwise," valued the subject-matter of transfer, and, agreeably to the statute, admeasured the tax which thereupon "attached" to the person or persons *being transferees.* Immediately after the present law was held to reflect the theory herein recognized, the judicial purpose to enforce it, no matter how complex the transfers, was announced. State v. Pabst, 139 Wis. 561, 121 N. W. 351. The suggestion of the Commissioner of Internal Revenue that provisions of the statute dealing with trust estates may still, without express language, but inferentially, dominate the fundamental theory of the law, and enable the paying of a tax out of an estate *in gross,* is wholly repugnant to the plainest language of the law. If tenable, it compels renunciation of everything which the state has done or aimed to do to adopt the one theory believed to be possible under the Constitution, and, if recognized, must inevitably introduce into the law and its administration, on considerations of convenience, the option or right to adopt one or the other, or a hazy commingling, of two diverse theories of inheritance taxation.

[3] So, when the state law is clear, Keith v. Johnson leaves no discretion as to deductibility. The right is exercisable under the federal law upon "incidence" of the state tax; and, as indicated, difficulty of measuring or of apportioning taxes against or between transferees cannot shift the legal incidence, nor fix the taxes against property of a decedent, in gross. The regulations of the Treasury Department recognize and embody the conception that the tax must be fixed and imposed upon transfers and against transferees in severalty, whenever that is the theory of the state law.

The views thus entertained uphold the plaintiff in his entire contention, and they sustain the demurrer to the answer. An order may be entered, sustaining the demurrer to the answer, and, unless the defendant within 20 days shall file an amended answer, plaintiff may take judgment according to the prayer of the complaint.

---

## In re GETZ.

District Court, E. D. Pennsylvania. April 24, 1928.

Nos. 10965, 11042.

I. **Statutes** ☞184, 217—**History and purpose of legislation may be considered, where it is ambiguous.**

In case of ambiguity as to meaning of a statute, it is proper to consider the history and the purpose of the legislation, in order to determine its true intent.

2. **Bankruptcy** ☞59—**"Judgment" which, if alleged bankrupt permits to be entered against him and not vacated within 30 days after entry, constitutes act of bankruptcy, must be judgment creating lien on bankrupt's property (Bankruptcy Act, § 3a (4), 11 USCA § 21 (a) (4).**

Construing Bankruptcy Act, § 3a (4), 11 USCA § 21 (a) (4), defining as act of bankruptcy the suffering or permitting, while insolvent, any creditor to obtain through legal proceedings any levy, attachment, "judgment" or other lien which has not been vacated or discharged within 30 days, *held* that, applying the rule of "noscitur a sociis," the word "judgment" means a judgment which creates a lien on some property of the alleged bankrupt.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Judgment (in Law).]

In Bankruptcy. In the matter of Max F. Getz, alleged bankrupt. On motion to dismiss a creditor's petition. Decree in accordance with opinion.

Joseph K. Willing, of Philadelphia, Pa., for petitioners.

Bertram K. Wolfe, of Philadelphia, Pa., for bankrupt.

KIRKPATRICK, District Judge. This is a motion to dismiss a creditors' petition, for the reason that it fails to set forth an act of bankruptcy within the meaning of the statute. The act of bankruptcy intended to be charged by the petition is the fourth act, created by the amendment of 1926 (11 USCA § 21(a) (4), which is as follows: "(4) Suffered, or permitted, while insolvent, any creditor to obtain through legal proceedings any levy, attachment, judgment, or other lien, and not having vacated or discharged the same within thirty days from the date such levy, attachment, judgment, or other lien was obtained."

The petition avers in substance that the alleged bankrupt, while insolvent and within four months next preceding the filing of the petition, permitted a judgment to be entered against him, which judgment has not been vacated, discharged, or satisfied, and that more than 30 days have elapsed since the entry of the judgment. It is contended that this is not sufficient, because there is no allegation that the judgment is a lien on any property of the bankrupt. The point for decision is whether the word "judgment" in the statute means only a judgment which is a lien upon the property of the alleged bankrupt, or means any judgment, whether a lien or not.

[1] The statute specifies "any levy, attachment, judgment, or other lien." 11 USCA § 21(a) (4). Many judgments (as in a case where the defendant owns no real estate, but personal property only) are not liens. There is thus an ambiguity, and it is proper to consider the history and purpose of the legislation in order to determine its true intent. In Citizens' Banking Co. v. Ravenna National Bank, 234 U. S. 360, 34 S. Ct. 806, 58 L. Ed. 1352, the Supreme Court held that the clause providing for the third act of bankruptcy (11 USCA § 21(a) (3) failed to cover a situation where the bankrupt had permitted a lien to be obtained against his property by legal proceedings, and had then done nothing for a period of more than four months, as a result of which the lien of the judgment had ripened into a legal and enforceable preference.

The amendment of 1926 was designed for the specific and limited purpose of remedying this defect in the existing law. The report of the Senate Judiciary Committee upon the bill says: "The amendment is for the purpose of preventing a creditor from obtaining a lien and holding it without proceeding to a sale under it until it ripened into a preference." Clearly, the attention of the Congress was turned only to judgments which were liens. Legislation directed toward judgments which were not liens would have been superfluous. Under the law as it stood before the amendment, no advantage could have been obtained prior to levy by the creditor holding such a judgment, and after levy and upon proceeding to a sale the provision for the third act of bankruptcy struck down the preference.

[2] The context in which the word appears, and the limitations implied in the phrase "or other liens," call for the application of the rule of noscitur a sociis. Neal v. Clark, 95 U. S. 704, 24 L. Ed. 586. The plain intent of the Congress, as well as the association of the word in the act itself, "justifies, if it does not imperatively require," the conclusion that the judgment meant is a judgment which creates a lien.

If the judgment referred to in the petition is a lien, and so within the meaning of the statute thus construed, the petitioners should be permitted to so aver. Ten days will be allowed for amendment, and in default of such amendment the petition will be dismissed.

═══════════

## GEFFERS v. CHICAGO, B. & Q. R. CO.

District Court, D. Minnesota, First Division. April 16, 1928.

1. Removal of causes ⊂⇒25(1)—Complaint for injury in interstate commerce does not involve fraudulent attempt to prevent removal, where question of interstate commerce is doubtful (Federal Employers' Liability Act [45 USCA §§ 51–59]).

In action under Federal Employers' Liability Act (45 USCA §§ 51–59; Comp. St. §§ 8657–8665), in which complaint alleges that plaintiff was engaged in interstate commerce, case should be remanded to state court, if it is a fairly doubtful question as to whether plaintiff was engaged in interstate commerce, since under such circumstances there can be no fraud in plaintiff's complaint; it being provided by Federal Employers' Liability Act (45 USCA §§ 51–59; Comp. St. §§ 8657–8665), that no case arising under the act and brought in state court should be removed.