**VON SEGERLUND et al. v. DYSART et al.**

No. 10339.

Circuit Court of Appeals, Ninth Circuit.

Aug. 30, 1943.

756

Rupert B. Turnbull and L. H. Phillips, both of Los Angeles, Cal., for appellants.

Hiram E. Casey and S. Bernard Wager, both of Los Angeles, Cal., for appellee.

Before WILBUR, GARRECHT, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

The pivotal question herein is whether or not, in a case where a judgment creating a lien on only the real property of an alleged insolvent was obtained prior to the four-month period immediately preceding the filing of an involuntary petition in bankruptcy, a levy on the debtor's *personal* property made *within* the four-month period created a lien the permitting of which constituted an act of bankruptcy.

On March 22, 1937, a judgment in favor of Mary T. Christensen and against Stella Dysart, the appellee, was docketed in the office of the county clerk of McKinley County, New Mexico, and thereupon became a lien upon the appellee's real property in that county.

On August 25, 1938, a judgment in favor óf E. H. Youngblood against the appellee was filed in the same county.

On September 8, 1937, and on December 13, 1939, writs of execution were served under the Christensen judgment by levying upon the appellee's personal property.

On July 5, 1941, July 29, 1941, and October 17, 1941, petitions to have the appellee declared a bankrupt were filed by about forty unsecured creditors, who are the appellants herein.

On July 7, 1941, by virtue of an alias writ issued under the Christensen judgment on May 5, 1941, and a levy thereunder made on June 6, 1941, personal property of the appellee was sold by the sheriff of McKinley County, New Mexico. It was the permitting of this execution, levy and sale, which occurred within the statutory four-month period, that appellants contend constituted the act of bankruptcy.

In the court below, the appellants offered in evidence authenticated copies of the judgments, executions, notices of sale, sheriff's returns of sale, and other proceedings in the Christensen and Youngblood cases, supra. An objection on behalf of the appellee to the introduction of the Christensen exhibit was sustained. The Youngblood exhibit was admitted for the sole purpose of showing that at the date the Youngblood judgment was secured the appellee was the owner of real property that stood in her name in McKinley County, New Mexico.

The appellants then made an offer of proof to show that each of the petitioning creditors had provable claims against the appellee; that those claims aggregated more than $500; that on the dates on which the three petitions in involuntary bankruptcy were filed, during the respective four-month periods immediately prior thereto, and on the dates of the alleged acts of bankruptcy, the appellee was insolvent. These offers of proof were denied.

The court ruled that even if insolvency were proved, there would be lacking the other two elements essential to establish the act of bankruptcy alleged—the existence of a lien and the failure to discharge it.

The foregoing rulings are alleged to constitute error, and upon that contention the present appeal is bottomed.

A connected case, involving the same alleged bankrupt, some of the same petitioning creditors, and the same Christensen and Youngblood judgments, has already been before this court. Dysart v. Von Segerlund et al., 118 F.2d 482, decided March 22, 1941. We there held that, though there was evidence that the alleged bankrupt permitted an execution to be issued on November 21, 1939, and to be levied on her property on December 13, 1939, there was no evidence that the lien thus obtained, if any, was not vacated within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of the property, as required by the Bankruptcy Act. Since the date of that decision, however, another act of bankruptcy, as we have seen, is alleged to have been committed.

The provision of the Bankruptcy Act pertinent to this case is 11 U.S.C.A. § 21, sub. a(3), which reads as follows:

"§ 21. Acts of bankruptcy

"a. Acts of bankruptcy by a person shall consist of his having * * * (3) suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings and not having vacated or discharged such lien within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of such property."

The appellants contend that the levy of execution on personal property of the alleged bankrupt on June 6, 1941, followed by the sale of that property on July 7, 1941, created a lien thereon within four months preceding the filing of the creditors' petitions, which lien was not discharged by the debtor.

The appellee, on the other hand, asserts that when a judgment has become a lien and four months are permitted to elapse, the right to claim that a lien has been secured under that judgment within the meaning of § 21 (a) (3) has been "exhausted".

A judgment lien as it exists in the United States is a creature of statute, and in the absence of statute does not give rise to a lien until an execution is delivered to the sheriff. 34 C.J. 568, 569, § 870. "Except in the few jurisdictions where a judgment does not of itself bind land, a judgment attaches as a lien without the use of any process, except as to property which is not commonly subject to the lien of a judgment, but can be made so by the levy of an execution, as trust property or personalty * * *." Id., pp. 584, 585, § 892. "The lien [of a judgment] does not attach to personal property except where a statute so provides." Id., pp. 587, 588, § 898. See also 31 Am.Jur., Judgments, § 308, p. 23.

A levy on the property of a judgment debtor ordinarily gives the execution creditor a lien thereon. 33 C.J.S., Executions, p. 289, § 123; 1 Collier on Bankruptcy (Fourteenth Edition), § 3.308, p. 449. Liens obtained by a levy on personal property do not usually require the aid of equity for their enforcement.

The foregoing principles are found incorporated in the statutes and jurisprudence of most states.*

The statutes of New Mexico seem to follow the general law relating to judgment liens and levy liens, although in some respects in that state both the statutory enactments and the jurisprudence on the subject are somewhat meager. It was stipulated by counsel, however, that, under the laws of New Mexico as they existed at the time the judgment was docketed, such docketing created a lien on the real property of the judgment debtor. This stipulation is apparently based upon § 76-110 of the New Mexico Statutes Annotated of 1929, which reads as follows: "Any money judgment rendered in the supreme or district court shall be docketed by the clerk

---

* At random, we may mention:

California (C.C.P.1931, § 674; C.C. § 3057; Johnson v. Gorham, 6 Cal. 195, 65 Am.Dec. 501; Balzano v. Traeger, 93 Cal.App. 640, 643, 644, 270 P. 249; 11 Cal.Jur. § 24, p. 69, and 15 Cal.Jur. § 235, pp. 217-218);

Florida (Claude D. Reese, Inc., v. United States, 5 Cir., 75 F.2d 9);

Michigan (3 Compiled Laws 1929, § 14541 and annotation thereto);

New York (In re New Lots Sash & Door Corporation, D.C., 3 F.Supp. 570; Elkay Reflector Corporation v. Savory, Inc., 2 Cir., 57 F.2d 161, 162; New York Civil Practice Act, § 679);

Oregon (Code of 1930, § 2-1601).

of the court in a book kept for the purpose, and shall be a lien on the real estate of the judgment debtor from the date of the filing of a transcript of the docket of such judgment in such book in the office of the county clerk of the county in which such real estate is situate."

■ From the foregoing section it is clear—and counsel for the appellee so concede—that in New Mexico a judgment is not "an automatic lien on personal property".

Neither the statutes of New Mexico nor the record herein are quite so specific regarding the lien created on personal property as the result of a levy under a writ of execution. Both sides, however, assume that in New Mexico the general law is followed, and that a levy does create a lien on personalty. Counsel for the appellee contend, however, that permitting the procurement of the lien so created, which came into existence more than four months after the creation of the "original" lien on the real property of the judgment debtor, cannot constitute an act of bankruptcy.

■ Be that as it may, regardless of any stipulation or avowals in the record, this court may take judicial notice of the statutes of New Mexico, as interpreted by its highest court. Lamar v. Micou, 114 U.S. 218, 223, 5 S.Ct. 857, 29 L.Ed 94; Bowen v. Johnston, 306 U.S. 19, 23, 59 S.Ct. 442, 83 L.Ed. 455.

■ Independent research has convinced us that New Mexico follows the general law regarding the creation of a lien on personalty as the result of a levy under a writ of execution. Section 21-213 of the New Mexico Statutes Annotated of 1941 reads as follows: "*The lien of the levy* upon the property shall continue until the debt is paid, and the clerk, unless otherwise directed by the plaintiff, shall forthwith issue another execution, reciting the return of the former execution, the levy and failure to sell, and directing the sheriff to satisfy the judgment out of the property unsold, if the same is sufficient, if not, then out of any other property of the debtor, subject to execution." [Italics our own.]

The foregoing section has been carried over verbatim from the 1929 code, supra, where it appeared as § 46-122, under the heading of "Alias writ". And it was under an "alias writ" that the levy of June 6, 1941, was made.

An examination of the entire chapter in which the foregoing section appears makes it clear that the "property" referred to therein means personalty as well as realty. It is equally clear that each levy creates a new lien upon the property affected by it.

We are thus brought to a consideration of the final and crucial question in this case; namely, is a lien thus created by a levy upon personal property during the four months' period preceding the filing of a petition in involuntary bankruptcy, under a judgment that itself created a lien upon the debtor's real property more than four months prior to such filing, the kind of lien that is denounced in § 21 (a) (3)?

■ At the outset, it is well to recall the three elements that go to make the act of bankruptcy condemned by the clause in question. In the oft-quoted case of Citizens Banking Co. v. Ravenna Nat. Bank, 234 U.S. 360, 364, 365, 34 S.Ct. 806, 808, 58 L.Ed. 1352, those elements are thus stated: "Looking at the terms of this provision, it is manifest that the act of bankruptcy which it defines consists of three elements. The first is the insolvency of the debtor; the second is suffering or permitting a creditor to obtain a preference through legal proceedings; that is, to *acquire a lien* upon the property of the debtor by means of a judgment, attachment, *execution or kindred proceeding*, the enforcement of which will enable the creditor to collect a greater percentage of his claim than other creditors of the same class; and the third is the failure of the debtor to vacate or discharge the lien and resulting preference five days before a sale or final disposition of any property affected. Only through the combination of the three elements is the act of bankruptcy committed. Insolvency alone does not suffice, nor is it enough that it be coupled with suffering or permitting a creditor to obtain a preference by legal proceedings. The third element must also be present, else there is no act of bankruptcy within the meaning of this provision." [Italics our own]

See also In re D. F. Herlehy Co. D.C., 247 F. 369, 373, 374.

While the clause under discussion has been amended since the decision in the Ravenna Bank case, supra, for the purposes of the instant case the language used in that decision is apposite.

It will be observed that it is the creation, the obtaining, the acquisition of a lien with-

in the statutory period that must not be permitted. The continuation of a lien that was created more than four months before the filing of the petition is not denounced. In Globe Bank & Trust Co. v. Martin, 236 U.S. 288, 299, 35 S.Ct. 377, 381, 59 L.Ed. 583, the court said: "The difference, having the provisions of the act in view, between the beginning of a proceeding to assert liens that existed more than four months before the filing of the petition in bankruptcy, and the attempt to create them by attachment and other proceedings within four months, has been recognized in decisions of this court." [Italics our own]

The importance of the time of creation of a lien in determining whether or not the permitting of it is condemned by the statute was well emphasized by Judge Lowell in Re Blair, D.C., 108 F. 529, 530: "Under some circumstances, all liens obtained through legal proceedings are avoided, in whatever part of the suit or by whatever form of proceeding they are created. If the lien is created by the levy, then the lien of the levy is avoided; if created by the judgment, then the lien of the judgment is avoided; if created by the attachment, then the lien of the attachment is avoided; but, if the lien created by the attachment is saved, that lien may be enforced by appropriate proceedings, even though such proceedings include a judgment and levy made within the limited time." [Italics our own]

The decision in Re Blair was cited with approval in the leading cases of Metcalf v. Barker, 187 U.S. 165, 174, 23 S.Ct. 67, 47 L.Ed. 122, and Straton v. New, 283 U.S. 318, note page 326, 51 S.Ct. 465, note page 468, 75 L.Ed. 1060. See also 1 Remington on Bankruptcy (Fourth Edition), § 150.70, p. 242, et seq.; id., 1942 Supplement, § 150 and note, pp. 68-69; id., Vol. 4, § 1889, p. 930.

Counsel have not cited any decision that is squarely in point. The books, however, are not entirely barren of precedents.

■ Perhaps the most lucid statement of the rule that we regard as controlling in this case is to be found in Re Bailey, D.C., 144 F. 214, 215. In that case Judge Wolverton, of the United States District Court of Oregon, used the following language: "A judgment itself does not necessarily constitute a lien upon any property, unless made so by statute. Usually, as it respects personal property, it only becomes a lien by virtue of an execution and a levy thereunder. From the time of the levy, the lien is deemed to attach, and not before. Collier on Bankruptcy (4th Ed.) p. 419. It can make no difference, therefore, in this case, that the judgment was obtained long prior to the filing of the petition in bankruptcy. The levy was made some time prior to August 1, 1903, and less than four months preceding the filing of such petition."

. Thirty years after the decision in Re Bailey was handed down, it was cited with approval on this same point by the United States Circuit Court of Appeals for the Second Circuit. In Adler v. Greenfield, 83 F.2d 955, 956, the court said: "It makes no difference that the judgment was obtained more than four months prior to the filing of the petition in bankruptcy. The judgment alone gives no lien against the debtor's personal property until the execution against it is delivered to the proper officer to be executed. New York Civil Practice Act, § 679. Here the property was transferred to the bankrupt, within the meaning of the statute, and since the levy and sale were made within the four months preceding the bankruptcy, it was voidable by the trustee. [Cases cited]".

Again, in Nogi v. Greenwood, D.C., 1 F.Supp. 60, 62, we find the following language: "A judgment is not a lien on personal property of the debtor; it is only the enforcement of such judgment that can possibly create a preference. The mere entry of judgment cannot."

And in a more recent case we find the same principle thus succinctly stated: "In the case of judgments, judgment creditors obtain no lien against personal property until execution and levy." In re Richenell Fabric Mfg. Co., Inc., D.C., 31 F.Supp. 645, 647.

The date of the levy fixes the date when the lien is created.

■ So in the instant case, Mrs. Christensen obtained no lien on the appellee's personal property affected by the levy of June 6, 1941, until a deputy sheriff of McKinley County actually levied execution upon that property, as reported by him in his amended return of execution. The judgment that the creditor had obtained in 1937 operated automatically as a lien only upon the real property of the appellee. As far as the specific personal property in question is concerned, a judgment lien was not dormant, not quiescent, not in a state of suspended animation: it simply did not exist.

■ The very language of § 21 (a) (3) shows that it contemplates the possibility of the creation of a lien on *part* of the property of a debtor, while the rest of his estate, both real and personal, may remain unencumbered. The debtor, while insolvent, is forbidden to permit any creditor to obtain a lien upon "any" of his property, without discharging "such" lien at least five days before the date set for the sale of "such" property. 1 Collier on Bankruptcy, Fourteenth Edition, § 3.310, p. 454.

Lest the foregoing paragraph be thought to state a truism, it should be remembered that the appellee insists that once a lien is "obtained upon any property of the debtor through legal proceedings * * * wherein the judgment has become a lien", and the four-month period has expired, "then the right to have the procurement of a lien upon such judgment as an act of bankruptcy has been exhausted." Counsel cite no authorities supporting this theory of "exhaustion". Perhaps this statement in the brief embodies the fallacy upon which, as we think, the appellee's argument is based. One cannot "exhaust" what has never existed. Until the levy of June 6, 1941, there never was imposed upon the appellee's personal property any lien whatsoever resulting either directly or indirectly from the Christensen judgment.

Counsel for the appellee devote one-third of their brief to a quotation from this court's opinion in the case of Northwestern Pulp & Paper Co. v. Finish Luth B. Concern, 51 F.2d 340, 342-345. That opinion has been widely cited in the books, and we are in complete accord with the conclusions arrived at therein. The facts in the Northwestern Pulp case, however, were quite different from those that now confront us. The following excerpts from that opinion, which the appellee seems to have overlooked, make clear at once the essential difference between the two cases:

"The preference complained of is alleged to be that the respondent allowed Thomas and Meservy, one of its creditors * * * to secure a judgment by default in the circuit court of Multnomah county, Ore.; allowed said creditor to secure an execution on the judgment on all of the respondent's *timber lands.* * * *

"In the amended petition, however, the creditors attempted to set forth an additional act of bankruptcy. They alleged, in substance, that the respondent suffered judgment to be entered against it in favor of the Pacific Coast Credit Association on September 21, 1929; that said judgment was entered on the docket of the circuit court of Clatsop county * * *; and that a sale under execution out of said court was had. * * *

"It will be seen that both judgments against the alleged bankrupt were docketed and therefore, according to the law of Oregon, *became valid liens, long before the four-month period had commenced to run.* Section 2-1601, Oregon Laws, 1930 Compilation." [Italics our own.] 51 F.2d at pages 341, 342.

There is no suggestion in that case that any personalty was seized in the executions there levied. In fact, the record is affirmatively otherwise. The opinion itself, as we have seen, states that the first execution was on timber lands; and the transcript in that case discloses that the amended petition alleged that, in the Pacific Coast Credit Association litigation, the respondent "permitted execution to issue out of said circuit court and a large amount of real property, to wit, more than ᴧ50 acres, to be sold under said execution," etc.

Thus we see at once that the case most relied upon by the appellee does not apply to the situation here presented.

It is interesting to note that the learned judge below at first adopted a view of law which was in accord with our conclusions herein, *and that counsel for the appellee agreed with him.* This can be gleaned from the following colloquy:

"The Court. Under your theory automatically when her judgment was secured it became a lien upon her real property.

"Mr. Casey. Yes.

"The Court. All right. But if it did not become a lien on her personal property, the mere fact that the lien was impressed on her real property would not destroy or would not be the starting point for the rights *as to a lien on personal property which could not arise until a levy later on.*

"Mr. Casey. I agree with you there." [Italics our own.]

But counsel proceeded "to go a step further" and to attempt to construe the legal philosophy upon which the clause in question is based. Since we have already fully set forth the appellee's contentions, it is not necessary to summarize them further. Suffice it to say, we believe that at that point counsel fell into error, and carried the learned judge with him.

Accordingly, we hold that the court below should have accepted the appellants' offer of proof, and should have permitted them to introduce evidence tending to show that, within the statutory four-month period, the appellee, while insolvent, permitted a judgment creditor to levy upon her personal property and failed to discharge the lien thus acquired within thirty days from the date thereof or at least five days before the date of sale.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded.