### In the Matter of PIONEER MOTOR SERVICE, INC., Alleged Bankrupt.
### Pioneer Motor Service, Inc., Appellant.
### No. 16605.

United States Court of Appeals
Seventh Circuit.

Oct. 8, 1968.

Rehearing Denied Nov. 12, 1968.

Certiorari Denied Feb. 24, 1969.

See 89 S.Ct. 875.

Irving Goodman, Chicago, Ill., for appellant.

Sidney S. Deutsch, Ira J. Melaas, Jr., Van Der Kamp & Crampton, Rock Island, Ill., for Herriott Trucking Co., Inc.

Before CASTLE, Chief Judge, DUFFY, Senior Circuit Judge, and HASTINGS, Circuit Judge.

HASTINGS, Circuit Judge.

On October 6, 1967, the district court [1] entered an order sustaining the referee in bankruptcy [2] on two certificates of review of decisions by the referee filed December 10, 1964 and March 4, 1965, respectively. This appeal is from such order of affirmance by the district court.

The December 10, 1964 certificate concerned an adjudication of Pioneer Motor Service, Inc., (Motor) a corporation, to be an involuntary bankrupt. The March 4, 1965 certificate related to an order by the referee denying a continuance of the sale of bankrupt's certificate of necessity and convenience.

We have reviewed the record in this matter, including the thorough and studied memorandum decisions and orders of the referee and the district court. We shall briefly state the subject matter giving rise to the issues raised.

The petition for adjudication was filed by three creditors of Motor, viz: Pioneer Transfer & Warehouse Co., (Transfer), a corporation, and two employees of Motor.

Julius Gottlieb, president and majority stockholder of Transfer, executed the petition on behalf of Transfer. The two employees held claims for unpaid vacation pay. Herriott Trucking Company, Inc., a corporation, intervened as a petitioning creditor with the foregoing.

Motor was engaged in the freight business in Rock Island, Illinois, principally in carrying freight to the Chicago area. Its sole stockholder was John O. Gottlieb, of Beverly Hills, California, a brother of Julius. Julius resided in Moline, Illinois, and had managed and operated Motor for his brother for more than 20 years as its executive vice-president. Motor was the owner of an Illinois Certificate of Public Convenience and Necessity.

Transfer was engaged primarily in hauling local freight in the Rock Island area and renting tracts of real estate it owned. Julius was president and majority stockholder. It owned the building from which Motor conducted its freight business and leased to Motor the trucks it used in the operation of its business. Transfer had advanced (loaned) Motor more than $118,000 in operating funds to keep Motor's business active and had substantial claims for rent of its building to Motor ($48,000) and for rental of its trucks for use of Motor ($33,000).

Following a series of contested hearings on the adjudication petition and objections thereto by Motor, the referee found and determined that Motor was insolvent. As of July 25, 1964, its assets were fairly evaluated at $21,329 and its liabilities were approximately $263,000. Its only tangible asset was some worn out unusable junk trucks. Its intangible assets were insurance deposits, accounts receivable, prepaid truck licenses and petty cash.

No evidence was introduced by any party showing the value of Motor's Illinois certificate, none appeared on Motor's books, and its value, if any, was not included in its list of assets.

On July 25, 1964, the United States of America, Internal Revenue Service, recorded a tax lien in the recorder's office, Rock Island County, Illinois, for highway use tax in the amount of $3,251.45. On July 30, 1964, IRS levied upon Motor's bank account, and on August 4, 1964, IRS collected $797.45 from Motor's account.

Our examination of the record compels the conclusion that there is more than sufficient evidence to support the determination that Motor was insolvent on July 25, 1964 and that this condition continued through the filing of the adjudication petition on August 10, 1964 and the referee's final order of adjudication

---

1. United States District Court for the Southern District of Illinois, Northern Division (Rock Island, Illinois), the Honorable Robert D. Morgan, presiding.

2. Honorable Stephen J. Covey, Referee in Bankruptcy.

filed November 18, 1964. The referee did not err in so finding.

We need not consider the several claimed acts of bankruptcy asserted by petitioning creditors which were disallowed by the referee. We shall examine the one act of bankruptcy found valid by the referee.

Section 3 of the Bankruptcy Act, 11 U.S.C.A. § 21(a)(3) provides:

"§ 21. Acts of bankruptcy (a) Acts of bankruptcy by a person shall consist of his having * * * (3) suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings or *distraint* and not having vacated or discharged such lien within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of such property; * * *." (Emphasis added.)

It is undisputed that the Internal Revenue Service, having filed its lien on July 25, 1964, did levy on Motor's bank account on July 30, 1964 and collected approximately $800 on August 4, 1964 as a result of such seizure of Motor's property. It is further undisputed that Motor did not vacate or discharge such lien five days prior to the disposition of the bank account.

■ It is clear from the Bankruptcy Act quoted above that a lien *obtained through distraint* is an act of bankruptcy. It has been held that a seizure of property to enforce a lien, under the Internal Revenue Code, is a distraint within the meaning of the Act. Collier, Bankruptcy, 14th Ed., Vol. 1, § 3.308[6], pp. 470–471; In re Timberline Lodge, D.C.Ore., 139 F.Supp. 13, 15–17 (1955).

■ As *Timberline,* supra at 17, aptly quotes from Collier, supra at 471: "It is not the lien itself, nor the execution thereunder, which constitutes the act of bankruptcy. It is rather the failure on the part of the debtor to have the same vacated or discharged (1) at least five days before the date set for [the] sale or other disposition of the property, or (2) within thirty days after the creation of the lien."

■ We conclude, therefore, that the referee did not err in so finding this to be an act of bankruptcy within the purview of the Act.

What then gives rise to this present controversy? It would appear to be an ugly family dispute between two brothers. It apparently was brought into focus when the sale of bankrupt's certificate of convenience and necessity brought some $200,000 into the bankrupt's estate. John disputes the claim of Transfer (Julius) and resulting litigation is now pending undetermined in the state courts. Julius is now dead. John is willing to pay the creditors, except Julius, if the court will dismiss the bankruptcy proceeding and rescind the sale of Motor's certificate and thereby avoid the payment of fees, expenses and costs out of bankruptcy funds now on hand.

We have no desire to referee this family dispute. It is sufficient to say that under the record and applicable law there is ample support for the decisions of the referee under review and that the district court did not err in so holding. We have examined Motor's numerous other assertions of error and are not persuaded.

In passing, we observe that the delay in determining the certificates of review was occasioned by the untimely death of the late Judge Frederick O. Mercer and the resulting time required to fill the vacancy in his office.

For the foregoing reasons, we affirm the decision and order of the district court which is the subject of this appeal.

Affirmed.