**NORTHWESTERN PULP & PAPER CO. v. FINISH LUTH BOOK CONCERN et al.**

No. 6414.

Circuit Court of Appeals, Ninth Circuit.

July 13, 1931.

Wm. B. Layton, N. Ray Alber, and Myer C. Rubin, all of Portland, Or., for appellant.

E. B. Tongue, of Hillsboro, Or., and W. S. U'Ren, of Portland, Or., for appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

SAWTELLE, Circuit Judge.

This is an appeal from an order of adjudication in bankruptcy.

The original petition of involuntary bankruptcy was filed on August 18, 1930. It set forth that the alleged bankrupt, while insolvent, "suffered and permitted * * * one of its creditors to obtain a preference through legal proceedings and not having at least five days before a sale or final disposition of its property affected by such preference vacated or discharged such preference."

The preference complained of is alleged to be that the respondent allowed Thomas and Meservy, one of its creditors, holding a claim of $1,000 against the respondent, to secure a judgment by default in the circuit court of Multnomah county, Ore.; allowed said creditor to secure an execution on the judgment on all of the respondent's timber lands, of the approximate value of $50,000; and further allowed said property to be advertised and sold by the sheriff of said county for the amount of the judgment and costs, and a sheriff's certificate to issue thereon to said Thomas and Meservy for the amount of their claim and costs.

The petition further alleges that all these acts were committed within four months prior to the filing of the petition. There was no demurrer or motion filed by the alleged bankrupt to test the legal sufficiency of this pleading.

The only act of bankruptcy alleged refers specifically to the judgment obtained by Thomas and Meservy and the failure to discharge the preference arising thereunder within five days before the sale. If the dates of the rendition of the judgment or the docketing thereof, the sale of the property, and the issuance of the sheriff's certificate, had been properly set forth in the original petition, undoubtedly the latter would have been held by the court to have been insufficient to allege an act of bankruptcy.

Leave to amend was granted to the petitioning creditors, however, and thereafter, to-wit, on October 14, 1930, an amended petition was filed, setting forth in detail the entry of the judgment above referred to. There it was stated that the Thomas and Meservy judgment was taken on August 27, 1929, was entered on the judgment docket in Multnomah county the same day, and a transcript thereof was entered on the judgment docket of the circuit court of Clatsop county, Ore., on August 30, 1929; that such judgment was a lien on the respondent's property in the amount of $1,181.60; that respondent did not vacate the same within 30 days from the date of its entry or docketing, nor at any time thereafter, and suffered a large amount of its real property to be sold under execution on December 19, 1929, which was also the date of the sheriff's certificate of sale. (In a stipulation filed by counsel on both sides on the same day as that on which the amended petition was filed—October 14, 1930—the date of the sale is given as December 24, 1929.)

It is clear that the facts alleged in connection with the above judgment and sale of property did not constitute an act of bankruptcy.

In the amended petition, however, the creditors attempted to set forth an additional act of bankruptcy. They alleged, in substance, that the respondent suffered judgment to be entered against it in favor of the Pacific Coast Credit Association on September 21, 1929; that said judgment was entered on

the docket of the circuit court of Clatsop county on September 23, 1929; and that a sale under execution out of said court was had September 3, 1930.

It should be noticed in passing that the amended petition fails to specify that the alleged bankrupt was insolvent on the date when the alleged preference in the case of the Pacific Coast Credit Association was obtained, i. e., when the judgment was docketed. Furthermore, the stipulation of counsel, the opinion of the court below, and the narrative statement of evidence all fail to specify the alleged bankrupt's insolvency at the time that *either* of the two judgments was obtained.

While the omission of this statutory element of the act of bankruptcy complained of would itself render the amended petition fatally defective, there are additional grounds for reversing the judgment in this case. These grounds are to be taken up hereafter.

It is seriously questioned whether the amendment should have been allowed at all, since it was subject to the same objection as the original petition, in that it failed to allege an act of bankruptcy.

But, as we regard this case, neither the original nor the amended petition sets forth an act of bankruptcy. Therefore we pass to the main question in this controversy.

It will be seen that both judgments against the alleged bankrupt were docketed and therefore, according to the law of Oregon, became valid liens, long before the four-month period had commenced to run. Section 2-1601, Oregon Laws, 1930 Compilation. The two judgments, therefore, can be regarded as governed by the same legal principles, regardless of the dates when subsequent steps, looking to the enforcement of the liens thereunder, were taken.

It is worthy of note that, under the appellee's theory, the "sale" under the Thomas and Meservy judgments was not to be "completed" until December 24, 1930, and the Pacific Coast Credit Association "sale," not before September 3, 1931. The respective periods for the exercise of rights under the equity of redemption were to expire on those dates. In other words, no act of bankruptcy whatever had been consummated at the time of the filing of either the original or the amended petition, if we accept the appellee's theory with its full implications.

The controlling question presented in this case is whether or not an act of bankruptcy is committed by an insolvent debtor's failure to vacate a judgment that gave rise to a lien at a date *prior* to the commencement of the four-month period, within at least five days before the date of sale or other disposition of property affected by the judgment, said sale taking place *within* the four-month period.

If we apply to this definite problem certain fundamental principles of law, as set forth in the statute itself and expounded by numerous courts, we shall find that many of the apparent difficulties of the case will disappear.

The appellees invoke four clauses of section 3(a) of the Bankruptcy Act, as amended by the Act of May 27, 1926, § 3 (11 USCA § 21(a) as follows: "Acts of bankruptcy by a person shall consist of his having (1) conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, any part of his property with intent to hinder, delay, or defraud his creditors, or any of them; or (2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors; or (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or other disposition of any property affected by such preference vacated or discharged such preference; or (4) suffered, or permitted, while insolvent, any creditor to obtain through legal proceedings any levy, attachment, judgment, or other lien, and not having vacated or discharged the same within thirty days from the date such levy, attachment, judgment, or other lien was obtained. * * *" Subsection (b) of the same section (11 USCA § 21 (b) provides: "A petition may be filed against a person who is insolvent and who has committed an act of bankruptcy within four months after the commission of such act."

The appellees contend that suffering or permitting a judgment to be entered by any creditor or creditors, while the debtor is insolvent, thereby giving said creditor or creditors a preference, is tantamount to a transfer.

Though several opinions of lower federal courts are cited in support of this contention, numerous Supreme Court decisions, which will be considered later, hold that, when so created by state statute, a judgment becomes a valid *lien* as of the date of proper entry. It would be straining language to interpret a judgment "lien" as equivalent to

a "transfer," when the statute provides separately for "transfers" and for "preferences through legal proceedings." A judgment and its resultant lien fall naturally within the latter classification.

The act of bankruptcy, then, if any was committed in this case, was a violation of clause (3) or clause (4) of section 3(a), 11 USCA § 21 (a) (3) (4).

A scrutiny of each of these two clauses reveals that the act of bankruptcy therein defined consists of two elements, each of which must be present to bring the debtor within the purview of the statute: (1) The debtor must, while insolvent, suffer or permit a preference to be obtained; (2) he must fail to discharge such preference within a stated time.

The use of the conjunction "and" instead of the disjunctive particle "or" indicates that both elements must concur to constitute an act of bankruptcy. In re Vetterman (D. C.) 135 F. 443, 444. And both must occur *within* the four-month period prior to the filing of the petition in bankruptcy. If the lien is obtained before the determining period has commenced to run, and enforcement proceedings are instituted *within* the four-months' term, a complete act of bankruptcy has not been committed.

That both judgments in this case created valid liens at the time the judgments were docketed is admitted by the appellee in its amended petition. Provision for the obtaining of such liens is contained in the Oregon statute, supra.

It next becomes necessary to inquire whether merely permitting, while the debtor is insolvent, a judgment creditor to enforce, within the four-month period preceding the filing of the petition, a valid lien docketed many months in the past, constitutes an act of bankruptcy.

The general principle is thus laid down in Remington on Bankruptcy, section 150, vol. I, p. 199 (3d Ed.): "The mere enforcement, within the four months period, of a lien obtained before the four months period, is valid and unaffected."

The leading case on this subject is that of Metcalf v. Barker, 187 U. S. 165, 174, 23 S. Ct. 67, 71, 47 L. Ed. 122, in which Mr. Chief Justice Fuller enunciated the following doctrine: " * * * Where the lien is obtained more than four months prior to the filing of the petition, it is not only not to be deemed to be null and void on adjudication, but its validity is recognized."

See, also, Thompson v. Fairbanks, 196 U. S. 516, 525, 25 S. Ct. 306, 49 L. Ed. 577.

The doctrine laid down in Metcalf v. Barker, has been recognized or approved in later decisions of the United States Supreme Court. In Globe Bank, etc., v. Martin, 236 U. S. 288, 299, 35 S. Ct. 377, 381, 59 L. Ed. 583, Mr. Justice Day said: "The difference, having the provisions of the act in view, between the beginning of a proceeding to assert liens that existed more than four months before the filing of the petition in bankruptcy, and the attempt to create them by attachment and other proceedings within four months, has been recognized in decisions of this court. In Metcalf v. Barker, * * * a proceeding to give effect to a prior lien existing more than four months before the filing of the bankruptcy petition was held not within the meaning of section 67f of the bankruptcy act [11 USCA § 107, subd. f]."

See, also, Taubel, etc., Co. v. Fox, 264 U. S. 426, 430, 44 S. Ct. 396, 68 L. Ed. 770.

District and Circuit Courts have followed this principle for the past two decades. In Colston v. Austin Run Mining Company, 194 F. 929, 935 (C. C. A. 3), the court said, with reference to a foreign attachment lien created before the commencement of the four-month period: " * * * both reason and the weight of authority compel the conclusion that mere failure, while insolvent, to vacate or discharge the lien within the statutory period of four months, and at least five days before a sale or final disposition of the property affected, does not constitute an act of bankruptcy. Priority is obtained when a lien attaches, and not when it is enforced. The date of the sale is immaterial in this respect; whenever it takes place, it relates back to the date when the lien attached."

In Re Deer Creek Water & Water Power Co. (D. C.) 205 F. 205, 206, we find the following language: "It is not sufficient to charge acts of bankruptcy in the language of the statute. [Citing cases.] And the facts appearing from the petition showing sufferance of the enforcement by execution of a lien antedating four months the filing of the petition do not constitute or amount to such."

See, also, Yumet & Co. v. Delgado et al. (C. C. A. 1) 243 F. 519, 520, citing Metcalf v. Barker; In re Brinn (D. C.) 262 F. 527, 530; In re D. F. Herlehy (D. C.) 247 F. 369, 373.

In the case of In re McGraw (D. C.) 254 F. 442, 446, the situation is thus aptly summarized: "The rendering of a judgment,

therefore, can only constitute an act of bankruptcy when (a) the debtor is insolvent, (b) has within 4 months of the filing of the bankruptcy petition suffered and permitted it to be obtained, (c) upon which execution has issued, (d) been levied upon his property, (e) such property advertised for sale, and (f) he has failed, at least 5 days before the date fixed for sale, to discharge or vacate the same; *and all these prerequisites must occur within 4 months of the filing of the petition.*" (Italics our own).

So also in Gatell v. Millian, 2 F.(2d) 365 (C. C. A. 1), decided in 1924, per curiam: "The attachment made more than four months prior to the filing of the petition in bankruptcy created a valid lien. * * * The judgment, execution, and sale of the attached land within the four months and prior to the filing of the petition in bankruptcy were in enforcement of the lien acquired prior to the four months' period, and were valid notwithstanding the subsequent adjudication."

See, also, In re Berlowe (D. C.) 7 F.(2d) 898, 900, decided in 1925, and Julius S. Cohn & Co. et al. v. Drennan (D. C.) 19 F.(2d) 642, 643, decided in 1927, in which latter case the following language was used: "When such a lien, created by an attachment, has been subsistent beyond four months, the property or money seized by garnishment or other mesne process is not discharged therefrom simply because the judgment necessary for its recognition and enforcement comes of a date within four months of a date when less diligent creditors elect to file bankruptcy proceedings."

If an inchoate lien such as an attachment is given such validity if obtained prior to the four-month period, a fortiori a judgment lien, representing a complete right, should be accorded at least as much weight.

Another recent case in point is In re Kuhn et al., 35 F.(2d) 817, 818 (C. C. A. 7), decided November 13, 1929.

A similar doctrine has been announced by state Supreme Courts in recent decisions. In Steinfeld v. Copper State Mining Company et al., 290 P. 155, 157, decided July 19, 1930, the Supreme Court of Arizona said: "In 1914, one Leo Goldschmidt obtained a judgment against the Calumet & Copper Creek Mining Company for approximately $9,000, which judgment was docketed in Pinal county November 16, 1914. On June 2, 1915, the Calumet & Copper Creek Mining Company was adjudicated a bankrupt. This

adjudication did not affect the lien of the Goldschmidt judgment."

The Supreme Court of Virginia, in a case decided September 12, 1930, used the following language: "Neither the Bankruptcy Act (11 USCA), nor section 4359 (40), paragraph i [Code Va. 1924], above quoted, has the effect of nullifying or disturbing the order of priority of judgment liens acquired more than four months prior to the adjudication in bankruptcy." Savings & Loan Corporation v. Bear, 154 S. E. 587, 592.

Some confusion has arisen as to the interpretation of the case of Citizens' Banking Company v. Ravenna National Bank, 234 U. S. 360, 34 S. Ct. 806, 58 L. Ed. 1352. This case, which is relied upon heavily by the appellant, supports the latter's contention only indirectly. In fact, it is likewise cited by the court below to sustain a contrary view.

The difficulty probably arises from the fact that the Ravenna Case did not involve the same facts as does the instant suit. There the act charged was that the alleged bankrupt, within four months next preceding the filing of the petition, and while insolvent, (a) suffered and permitted the Citizens' Banking Company to recover a judgment against her, and to have an execution issued and levied thereunder, whereby the company obtained a preference over her other creditors, and (b) at the time of the filing of the petition, which was one day less than four months after the levy of the execution, she had not vacated or discharged the levy and resulting preference. No reference was made to a date of sale, within five days before which date she would have been obliged to vacate the levy if she wished to avoid an act of bankruptcy.

It will be noted that in the Ravenna Case, *all* the acts complained of were committed *within* the four-month period. The Supreme Court held that mere inaction by an insolvent debtor for four months after the levy of an execution upon his real estate did not constitute an act of bankruptcy. This interpretation of the Ravenna Case has already been given by this court. Larkin-Green Logging Co. v. Sabin, 222 F. 814, 816.

In the instant case, on the other hand, there were dates of sale under both judgments, from which dates the five-day period for discharging the preferences might have been computed. Both judgments, however, were created into liens on the debtor's property before the commencement of the four-month period, and were therefore unquestionably valid.

But even in the Ravenna Case, which, as we have said, did not present facts parallel with those at bar, the Supreme Court did use, on pages 364 and 365 of 234 U. S., 34 S. Ct. 806, 808, language that sustains the general principle by which we are being guided here: "Looking at the terms of this provision [section 3a(3) of the Bankruptcy Act], it is manifest that the act of bankruptcy which it defines consists of three elements. The first is the insolvency of the debtor; the second is suffering or permitting a creditor to obtain a preference through legal proceedings; that is, to acquire a lien upon property of the debtor by means of a judgment, attachment, execution, or kindred proceeding, the enforcement of which will enable the creditor to collect a greater percentage of his claim than other creditors of the same class; and the third is the failure of the debtor to vacate or discharge the lien and resulting preference five days before a sale or final disposition of any property affected. *Only through the combination of the three elements is the act of bankruptcy committed.* Insolvency alone does not suffice, nor is it enough that it be coupled with suffering or permitting a creditor to obtain a preference by legal proceedings. The third element must also be present, else there is no act of bankruptcy within the meaning of this provision."

Conversely, it may logically be argued that the first and third elements alone (namely, insolvency and failure to vacate the preference) do not suffice to constitute an act of bankruptcy, even though both have occurred within the four-month period. If the alleged preference (i. e., the docketing of the judgment) was obtained more than four months prior to the filing of the petition, this fact deprives the alleged act of bankruptcy, all of which must be committed within the four-month period, of one-third of its essence. Under such circumstances, there is no act of bankruptcy at all.

Counsel for the appellee contend that if the adjudication is set aside certain creditors of the alleged bankrupt will thereby be able to secure title to property to the exclusion of the other creditors, and that thus the estate will be dissipated. This is unfortunate, of course, but it must be remembered that the two judgments referred to were obtained during the year 1929, long prior to the time the creditors herein filed their original petition; and that they did nothing to protect their interests, and were neither diligent nor timely in asserting their rights, notwithstanding the

fact that the proceedings, including the filing of the suits, the recording of the judgments, the levies and the sales, were all matters of public record.

If there was any collusion or fraud in connection with such proceedings, no doubt the remedy can be obtained in the proper state tribunal. We are simply concerned here with whether or not an act of bankruptcy has been committed. We are of the opinion that it has not.

Judgment reversed.