**Matter of TIMBERLINE LODGE, Inc., an Oregon Corporation, Alleged Bankrupt.**

**No. B–36583.**

United States District Court
D. Oregon.
Oct. 5, 1955.

Zanley F. Galton and Herbert B. Galton (of Goldstein, Galton & Galton), Portland, Or., for petitioning creditors.

David M. Spiegel and Reuben G. Lenske (of Lenske, Spiegel & Spiegel), Portland, Or., for bankrupt.

McCOLLOCH, Chief Judge.

On April 25, 1955, an involuntary petition was filed by three creditors of Timberline Lodge, Inc., an Oregon corporation. The alleged bankrupt has filed a motion to dismiss the petition upon the ground that it does not allege an act of bankruptcy. Thereafter the petitioning creditors moved for permission to file an amended petition in an attempt to add two other acts of bankruptcy. These motions are now before the Court.

The motion for permission to amend the original petition to include allegations of two additional acts of bankruptcy (paragraph 6(b) and (c)) should be denied for these reasons:

1. In paragraph 6(b) there is an attempt to allege a preferential transfer which upon its face occurred more than four months prior to the proffer of the amended petition.[1]

2. Paragraph 6(c) fails to state specific facts relied upon to constitute a preferential transfer. Allegations in the language of the statute alone are insufficient.[2] The allegations should have included the date of the alleged transfer, a description of the property transferred,

[1]. In re Brown Commercial Car Co., 7 Cir., 227 F. 387. In re Haff, 2 Cir., 136 F. 78. Collier Bankruptcy Manual, 2d Ed. p. 230.

[2]. In re Gaynor Homes, Inc., 2 Cir., 65 F. 2d 378, 23 A.B.R.,N.S., 654. Collier Bankruptcy Manual, 2d Ed. p. 81.

and a statement that it was made in satisfaction of an antecedent debt.

A more difficult question is presented by the motion to dismiss the original petition upon the ground that it does not allege an act of bankruptcy. Allegations of the one act of bankruptcy are:

"(6) That within four months next preceding the filing of this petition, the said Timberline Lodge, Inc., an Oregon corporation, committed an act of bankruptcy in that it did heretofore, to-wit: on or about the 23rd day of March, 1955, while insolvent, suffered or permitted the United States to obtain a lien upon its property through legal proceedings and has not vacated or discharged such lien within thirty (30) days from the date thereof and that the United States did file in the office of the County Clerk of Multnomah County, Oregon, two liens being No. 3396 in the amount of $5380.03 and lien No. 3397 in the amount of $14,245.62; that said liens are still in full force and effect and have not been vacated or discharged as of the time of the filing of this paper. That the sale of the equipment and inventory of Timberline Lodge, Inc., under and by virtue of said liens is scheduled to be sold at public auction on April 29, 1955, by the Bureau of Internal Revenue."

The first part of this paragraph does not state an act of bankruptcy because the filing of a tax lien is not obtaining a lien "through legal proceedings." [3] The last sentence seems to contain the essence of an act of bankruptcy although defectively stated. The sentence might have stated that the District Director of Internal Revenue on a specified day levied upon and seized all inventory and equipment of Timberline Lodge, Inc., by distraint and advertised it to be sold at public auction on April 29, 1955, and thus said Timberline Lodge, Inc., while insolvent, suffered or permitted the United States to obtain and enforce federal tax liens upon its personal property by distraint and failed to vacate or discharge such liens at least five days before the date set for the sale.

If the petition were permitted to be so amended the court would be faced with a question, yet undecided, whether such facts constitute an act of bankruptcy within the meaning of U.S.C.A. Title 11, § 21, sub. a(3):

"* * * suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings or *distraint* and not having vacated or discharged such lien within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of such property."

Counsel for the alleged bankrupt contends that, inasmuch as a lien for delinquent taxes is not one obtained through legal proceedings, a distraint of specific personal property to enforce collection of such a lien is not the kind of distraint intended by Congress in adding the words "or distraint" by amendment in 1952. Counsel is incorrect in stating that prior to 1952 the above subdivision read as follows:

"Suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference;"

This wording was abandoned by the Chandler Act in 1938 so that for the past seventeen years the subdivision read exactly as first quoted above until 1952 when the underscored words "or distraint" were inserted. Thus in 1938 the troublesome word "preference" was eliminated. Counsel's argument in connection with the former use of the word preference in its technical sense is no longer tenable.

3. Matter of Rialto Properties Co., D.C. Cal., 8 F.Supp. 57.

Although House Report No. 2320 states in explanation of the 1952 amendment that "a distraint under a landlord's warrant is not a legal proceeding," the 1954 Collier Pamphlet Edition of the Bankruptcy Act very carefully avoids any confusion as to the scope of the amendment. Its comment edited by Professors Moore and Laube (both members of the National Bankruptcy Conference) follows:

"In addition, Section 3a(3) was amended to include within the third act of bankruptcy the suffering or permitting of a lien upon property by distraint, even though such a lien is not obtained by 'legal proceedings'. As stated in the House Report: 'Since it is the unvacated or undischarged lien which should, in such circumstances, give rise to the act of bankruptcy, a distraint should be included.' See also 1 Collier on Bankruptcy (14th ed. by Moore and Oglebay), Paragraphs 3.206 and 3.-308."

Distraint is a word of wide use. It comprehends any seizure of personal property to enforce a common law or statutory right or lien. Tax liens are created by statute. Like landlord liens they fall within the category of floating liens. Goods are sold and moneys are checked out of bank accounts every moment of the day against which there are floating liens. However such liens attach to specific personal property only when it is levied upon or seized to enforce the lien.

In adding liens obtained through distraint Congress could not have overlooked its own Internal Revenue Code Title 26 U.S.C.A., and particularly Subchapter C entitled "Distraint". Section 3690—Authority to Distrain—reads:

"If any person liable to pay any taxes neglects or refuses to pay the same within ten days after notice and demand, it shall be lawful for the collector or his deputy to collect the said taxes, with such interest and other additional amounts as are required by law, by distraint and sale, in the manner provided in this subchapter, of the goods, chattels, or effects, including stocks, securities, bank accounts, and evidences of debt, of the person delinquent as aforesaid. 53 Stat. 451."

Section 3692 provides that the collector "by warrant may authorize a deputy collector to levy, upon all property and rights to property * * * belonging to such person, or on which the lien provided in section 3670 exists, for the payment of the sum due * * *." Section 3693 entitled "Proceedings on Distraint" states "When distraint is made", as provided in Section 3690, the collector shall make an account of the goods or effects distrained, a copy of which shall be left with the owner or possessor thereof, and shall then proceed with the sale upon due notice published and posted as prescribed. Section 3710 requires "any person in possession of property, or rights of property, subject to distraint, upon which levy has been made, shall, upon demand * * * surrender such property or rights to such collector or deputy * * *." [4]

Obviously if Congress had intended to limit liens obtained through distraint to landlord liens it would have phrased the amendment accordingly. In most states where landlord liens are recognized, the liens are created by statute and exist against crops or possession of the tenant. The noncrop liens exist against all personal property of tenants so long as the property remains upon the rented premises and from ten to thirty days after removal. Like tax liens they attach to specific property only upon seizure under a warrant of distress. Such warrants are usually issued by a justice or other magistrate upon the affidavit of the landlord. It cannot be argued that only landlord liens are obtained through distraint. Like tax liens they are created

4. These sections are quoted as they existed in 1952 when Congress amended the Bankruptcy Act. They were revised in the 1954 Revenue Code.

and exist by virtue of statutes. Like tax liens they attach to specific personal property only by seizure under distraint.

As Collier states: "It is not the lien itself, nor the execution thereunder, which constitutes the act of bankruptcy. It is rather the failure on the part of the debtor to have the same vacated or discharged (1) at least five days before the date set for the sale or other disposition of the property, or (2) within thirty days after the creation of the lien." [5]

Fed.Rules Civ.Proc. rule 15 (a), 28 U.S.C.A., provides that after a responsive pleading a party may amend only by leave of court or by written consent; "and leave shall be freely given when justice so requires." Amendments to conform to evidence also must be permitted with great freedom. If the facts are such as to sustain the suggested additional allegations to remedy the defective pleading of the act of bankruptcy, the petitioning creditors may have five days within which to amend, otherwise the petition will be dismissed.

5. Collier on Bankruptcy, 14th Ed., Vol. 1, p. 461.