**JONATHAN'S LANDING, INC.**
Plaintiff–Appellee,

v.

**Jack TOWNSEND and Nancy Townsend,**
**Defendants–Appellants,**

**Blue Water Truss, Inc.,**
**et al., Defendants.**

No. 90–5533.

United States Court of Appeals,
Eleventh Circuit.

May 13, 1992.

Domenic L. Massari, III, Kass, Hodges & Massari, Tampa, Fla., for defendants-appellants.

Gary R. Allen, Chief, Teresa T. Milton, Appellate Section, Tax Div., Dept. of Justice, Brian C. Griffin, Elizabeth K. Wickstrom, David I. Pincus, Washington, D.C., for plaintiff-appellee.

Before HATCHETT and DUBINA, Circuit Judges, and CLARK, Senior Circuit Judge.

CLARK, Senior Circuit Judge:

This is an action in interpleader filed by plaintiff Jonathan's Landing, Inc. to require the defendants to litigate their claims to funds in the amount of $46,483.97 deposited into the district court's registry. This amount represents the debt owed by Jonathan's Landing to defendant Blue Water Truss, Inc. ("Blue Water") for materials supplied to Jonathan's Landing by the now insolvent corporation. The district court granted summary judgment in favor of the United States. We vacate and remand.

## I. FACTS

### A. Prior Proceedings.

In its complaint, plaintiff alleged that defendant Blue Water had supplied trusses to Jonathan's Landing for homes developed by plaintiff within the Jonathan's Landing planned unit development. During the months of approximately June and July 1988, defendant Blue Water supplied materials to plaintiff resulting in an indebtedness to Blue Water of $46,483.87.

On August 5, 1988, the defendant United States, through the Department of the Treasury–Internal Revenue Service, served plaintiff Jonathan's Landing with a Notice of Levy seeking all property, rights to property, money, credits and bank deposits then in plaintiff's possession to the credit of, belonging to or owned by Blue Water. On August 30, 1988 the plaintiff received a letter from defendant, Jack Townsend, notifying it that the Townsends held a first lien on all accounts receivable of Blue Water. On September 2, 1988, the Townsends, claiming status as first secured creditors and assignee of lien rights, filed claims of lien in the public records of Palm Beach County, Florida against properties for which Blue Water supplied materials to plaintiff Jonathan's Landing. The liens recorded against the property totaled $61,034.80. On September 14, 1988, the United States served plaintiff with a Final Demand dated September 6, 1988.

Unable to determine whom to pay, Jonathan's Landing filed this interpleader action, depositing the sum of $46,483.87—the amount held and in which all defendants claim an interest—into the court registry.

By order dated March 8, 1989, the district court dismissed the plaintiff from the action and ordered the parties to file claims in interpleader. Defendants Jack and Nancy Townsend and the United States, through the Internal Revenue Service and the Treasury Department, filed interpleader claims. The Townsends claimed priority to the interpled funds pursuant to U.C.C. filing statements and security interests they obtained in Blue Water's receivables on February 1, 1988, financing statements for which were filed on June 6, 1988. The Townsends also alleged a superior claim to the funds by virtue of an assignment of Florida National Bank's perfected security interest in Blue Water's inventory and accounts receivable. According to the U.C.C. assignment form, the bank's original financing statement was filed on January 8, 1987. The United States claimed priority pursuant to the federal insolvency statute, 31 U.S.C. § 3713, as a result of a lien obtained for unpaid federal employment taxes assessed against Blue Water during

the period beginning March 7, 1988 and ending July 5, 1988.

The parties filed cross-motions for summary judgment. The government, in its motion, relied exclusively on 31 U.S.C. § 3713(a)(1)(A), which provides:

A claim of the United States Government shall be paid first when—

(A) a person indebted to the Government is insolvent *and*—

(i) the debtor without enough property to pay all debts makes a voluntary assignment of property,

(ii) the property of the debtor, if absent, is attached; or

(iii) an act of bankruptcy is committed.

(Emphasis added). The government argued that because the requirements of § 3713 were met, the United States had absolute priority over the interpled funds.

## B. District Court Judgment.

The district court agreed, and, on May 28, 1990, granted the government's motion for summary judgment and denied the Townsend's cross-motion. In so concluding, the district recognized that the Internal Revenue Code, 26 U.S.C. § 6321 (also referred to as the "Federal Tax Lien Act"), creates a lien in favor of the United States upon "all property or rights to property, whether real or personal, belonging to" any taxpayer who fails to pay any tax after demand.[1] The tax lien arises at the time of assessment[2] and is perfected by filing, which in this case occurred on July 19, 1988. Pursuant to § 6323(a), the "first in time, first in right" priority applies to tax liens. In this case, however, the court held that although the taxpayer, Blue Water, claimed "first in time" priority, the insolvency statute, 31 U.S.C. § 3713(a)(1)(A), controlled because the company was insolvent.

To obtain priority under § 3713, the district court reasoned, the government must establish (1) that Blue Water was insolvent, and (2) that at least one of the three predicate acts in subsections (a)(1)(A)(i) through (A)(iii) had occurred. Here, the court found that no genuine issue of material fact existed as to Blue Water's insolvency. The court stated that while the issue of Blue Water's insolvency prior to August 5, 1988, the date upon which I.R.S. served notice of levy on Blue Water's property, was in dispute, the Townsends agreed that after the I.R.S. levied on the company's property, the company was insolvent. Specifically, the court found that "[a]fter IRS served its Notice of Levy on August 5, 1988 and seized Blue Water's property, the company was insolvent."[3]

As to the requisite predicate act, the district court again relied on the government's August 5, 1988 levy on Blue Water's property to find that Blue Water committed an "act of bankruptcy" as required under subsection (a)(1)(A)(iii). In determining the meaning of "act of bankruptcy," which is undefined in the statute, the court surmised that the statute apparently intended to incorporate the definition from the Bankruptcy Act of 1898, 11 U.S.C. § 21(a), which provides in pertinent part:

Acts of bankruptcy by a person shall consist of his having ... (3) suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings or distraint and not having vacated or discharged such lien within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of such property.

Reasoning that a "distraint" is a "seizure," the court concluded:

Under the facts of this case, Blue Water's property was seized on August 5, 1988 when the Notice of Levy was served on the company. Section 6331(b),

---

**1.** 26 U.S.C. § 6321 provides:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

**2.** 26 U.S.C. § 6322.

**3.** District Court Order, at 17.

Title 26 of the U.S. Code, explicitly provides that a levy "includes the power of distraint and seizure by any means." Further, a Notice of Levy effected a transfer of legal possession from Blue Water to the United States. *See United States v. Whiting Pools, Inc.*, 426 [462] U.S. 198, 209–212, 210 n. 18, [103 S.Ct. 2309, 2315–2317, 2316 n. 18, 76 L.Ed.2d 515] (1983). Further, it is undisputed that the IRS levy was not removed within thirty days after the Notice was served on August 5.[4]

On this basis, the district court determined that when the government levied on August 5, 1988, the taxpayer Blue Water became insolvent and, concurrently, committed an "act of bankruptcy." The absolute priority of the government pursuant to 31 U.S.C. § 3713 having been established, the court granted summary judgment in favor of the United States as a matter of law.

## II. DISCUSSION

The sole issue on appeal is whether the district court properly concluded that the requirements of 31 U.S.C. § 3713 were satisfied and the government was entitled to the interpled funds (the debt owed by Jonathan's Landing to the taxpayer Blue Water) based on an absolute priority of its tax lien.

Appeal from a grant of summary judgment as a matter of law is subject to *de novo* review.[5] After viewing factual inferences most favorably toward the nonmoving party,[6] we then must ask whether the district court correctly has analyzed the substantive law to determine if the grant of summary judgment was proper.[7]

A. District Court Improperly Relied on § 3713 in Granting Summary Judgment

■ As noted above, 26 U.S.C. § 6321 creates a lien in favor of the United States

for the amount of tax that an individual neglected to pay upon "all property and rights to property, whether real or personal, belonging to such person." Section 6323(a), however, provides in pertinent part:

The lien imposed by section 6321 shall not be valid as against any ... holder of a security interest ... until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

The government, in moving for summary judgment, did not challenge the Townsends claimed priority as secured parties without notice of the government's tax lien under § 6323. Instead the government, relying exclusively on 31 U.S.C. § 3713, argued that because Blue Water, as one "indebted to the Government"[8] was insolvent (as defined by that statute), the United States' tax lien, under the terms of that statute, "shall be paid first."[9]

While it is clear that taxes due to the United States are "debts" for purposes of § 3713,[10] the threshold question regarding application of the statute in the instant action is whether the debtor, in fact, was insolvent. On the meaning of insolvency under the statute, the Supreme Court has said

The meaning of the word "insolvent," used in the act, and of the insolvency therein referred to, is limited by the language to cases where "a debtor not having sufficient property to pay all his debts shall make a voluntary assignment," etc. Mere inability of the debtor to pay all his debts in ordinary course of business is not insolvency within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute which de-

---

**4.** District Court Order, at 23.

**5.** *Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1559 (11th Cir.1990).

**6.** *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987).

**7.** *Id.*

**8.** 31 U.S.C. § 3713(a)(1)(A).

**9.** *Id.*

**10.** *See Price v. United States*, 269 U.S. 492, 499, 46 S.Ct. 180, 180, 70 L.Ed. 373 (1926).

fines and explains the meaning of insolvency referred to in the earlier part.[11]

On appeal, the government argues that the tax claim has priority because, under the terms of § 3713, "a person indebted to the Government is insolvent and ... an act of bankruptcy [was] committed."[12]

The district court determined that the debtor's insolvency prior to August 5, 1988 was a disputed fact. The court noted that the government failed to establish insolvency prior to that date:

The government contends Blue Water was broke in both February and July 1988. The U.S. bases this contention upon the testimony of Harold Stewart. This person is labeled as an expert, but there is absolutely no evidence of the predicate for such a finding. The U.S. forgot that they must proffer evidence of a person's expertise even on a motion for summary judgment. The government only offers a few pages from his two depositions. In his first deposition, Stewart responded to a hypothetical question posed by the U.S. He answered that if the $450,000 note with the Townsends as the payee was reclassified from the Capital column of the financing statement to the Liability category, then the company would have been insolvent. However, the government does not present the entire transcript of either of Stewart's depositions. In the absence of proof that Stewart is an expert, this court is left with a paucity of evidence about the manner in which the financial statement was prepared. Without such evidence, *the court cannot determine the value of the company's assets and liabilities.* For example, the statement on its face does not indicate any valua-

tion as an ongoing business for its goodwill.[13]

Nevertheless, the court found that all of the parties agreed that as a result of the government levy on August 5, 1988, the taxpayer Blue Water became insolvent.

We assume for the purpose of this decision that the government levy resulted in Blue Water's insolvency. The question presented, then, is whether the government is correct in asserting that the levy which caused the debtor's insolvency also can satisfy the predicate requirement that the taxpayer, while insolvent, committed an "act of bankruptcy." Can the "act of bankruptcy" *cause* the taxpayer's insolvency, or must the government separately establish that the act of bankruptcy occurred *while* the debtor was insolvent? In resolving this issue, we look to the meaning of the phrase "act of bankruptcy" and the purpose behind that requirement.

As a matter of common sense, it cannot be the case that a creditor, by seizing a debtor's property, can create the very conditions precedent, *i.e.,* insolvency *and* commission of an "act of bankruptcy," required to establish its own absolute priority. The government argues that after the government seizure, Blue Water was insolvent; as a result of the government seizure, Blue Water committed an act of bankruptcy. The effect of the government's single action is that by levying on a taxpayer who fails to discharge a tax lien within thirty days, the government establishes absolute priority. However, proof of insolvency and proof of commission of an act of bankruptcy are separate requirements, intended firmly to establish evidence of the debtor's insolvency prior to awarding the government absolute priority over other lienholders.[14] Proof merely of an act of bankrupt-

---

**11.** *United States v. Oklahoma,* 261 U.S. 253, 259–60, 43 S.Ct. 295, 297–98 (1922).

**12.** To prevail under the statute, there must be proof of at least one of the three predicate acts listed in § 3713(a)(1)(A)(i) through (A)(iii). The district court held that neither the first requirement, that the debtor, without enough property to pay all debts, make a voluntary assignment of property, nor the second requirement, requiring that property of the debtor, if absent, be attached, had been satisfied. The government

does not challenge the court's determination on appeal; we, therefore consider only whether the third predicate act requirement was satisfied.

**13.** District Court Order, at 4–5.

**14.** Whether or not the United States is entitled to assert a priority depends upon a determination of the debtor's insolvency, as manifested in Section 191. Not only must a debtor be unable to meet his debts as they mature, but also the insolvency must be disclosed in one

cy does not separately establish insolvency.[15]

Similarly, and as will be discussed further, it cannot be said on these facts that the government seizure occurred *while* the debtor was insolvent. The district court held only that *after* the seizure, the debtor was rendered insolvent. Even on the facts relied on by the government, then, the government fails to satisfy the terms of the statute.

This said, we turn to an analysis of bankruptcy law in support of our reasoning. "The specified ways in which insolvency may be manifested include all cases in which ... an act of bankruptcy is committed under the laws of a state or under a national bankruptcy law." [16] The Supreme Court in *Bramwell v. United States Fidelity & Guaranty Co.* further stated that § 3713's reference to an "act of bankruptcy," which is not defined in the statute, "is general and is for the purpose of defining one of the ways in which the debtor's insolvency may be manifested." [17] The Court, there, in defining "act of bankruptcy" under the predecessor statute to § 3713,

looked to the Bankruptcy Act, specifically, section 3(a)(4) of the Bankruptcy Act of 1898.[18] Likewise, here, the district court appropriately incorporated the definition from section 3(a)(3) of the Bankruptcy Act,[19] which defines "act of bankruptcy" in pertinent part as follows:

> Acts of bankruptcy by a person shall consist of his having ... (3) suffered or permitted, *while insolvent*, any creditor to *obtain a lien* upon any of his property through legal proceedings or *distraint* and not having vacated or discharged such lien within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of such property.[20]

On the facts presented, Blue Water's property was seized on August 5, 1988 when the notice of levy was served on the company. 26 U.S.C. § 6331(b) explicitly provides that a levy "includes the power of distraint and seizure by any means." The levy also effected a transfer of legal possession from Blue Water to the United States. And, as Collier notes in his treatise, "[a] seizure of property to enforce a lien, under

---

16. *Bramwell v. United States Fidelity & Guaranty Co.,* 269 U.S. 483, 46 S.Ct. 176, 177, 70 L.Ed. 368 (1926).

of three modes: (1) a voluntary assignment, (2) the attachment of the effects of an absconding, concealed, or absent debtor, or (3) the commission of an act of bankruptcy. *United States v. State of Oklahoma,* 261 U.S. 253, 43 S.Ct. 295, 67 L.Ed. 638 (1923); *Bramwell v. United States Fidelity & Guaranty Co.,* 269 U.S. 483, 46 S.Ct. 176, 70 L.Ed. 368 (1926) and *United States v. Emory,* 314 U.S. 423, 62 S.Ct. 317, 86 L.Ed. 315 (1941); 3 *Collier on Bankruptcy,* Section 64.502.
*In re Belkin,* 358 F.2d 378, 381–82 (6th Cir.1966).
*See, e.g., Davis v. Miller–Link Lumber Co.,* 296 F. 649 (5th Cir.1924) (in order to establish priority under predecessor statute to § 3713, debtor must be insolvent *and* have committed one of the three predicate acts).

15. Collier, in explaining the "act of bankruptcy" provision on which the government relies, indicates that insolvency and commission of an "act of bankruptcy" are separate proof elements:
> If any of the elements, i.e., (1) insolvency, (2) suffering or permitting a creditor to acquire a lien upon the property of the debtor through legal proceedings or distraint, (3) the failure of the debtor to vacate or discharge the lien within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of such property, is missing, no act of bankruptcy under this subsection has been committed.
*Collier on Bankruptcy,* ¶ 3.302, at 461 (14th ed.).

17. *Id.* at 490, 46 S.Ct. at 178.

18. Bankruptcy Act of 1898, as amended February 5, 1903, 32 Stat. 797, c. 487 (Comp.St. § 9587). *See Bramwell,* 269 U.S. at 489, 46 S.Ct. at 178.

19. Pub.L. No. 95–598, 92 Stat. 2549.

20. 11 U.S.C. § 21(a)(3) (1976) (repealed 1978) (emphasis added). Congress revised the Bankruptcy Act by the Act of Nov. 6, 1978, Pub.L. No. 95–598, tit. I, s. 101, 92 Stat. 2549 (1978) (codified as title 11 of the United States Code (1982)). As revised, title 11 does not include a definition for "acts of bankruptcy". *See* S.Rep. No. 989, 95th Cong., 2d Sess. 34 (1978) U.S.Code & Admin.News 1978, pp. 5787, 5820 (the Bankruptcy Reform Act of 1978 abolished the concept of "acts of bankruptcy"). But, "[w]hile the concept of an act of bankruptcy is no longer needed in Title 11 law, it remains a vital part of the Insolvency Statute." *Carter v. Carter,* 681 F.Supp. 323, 326 n. 13 (E.D.Va.1988).

the Internal Revenue Code, is a distraint within section 3a(3)." [21] Finally, it is undisputed, as the district court noted, that the I.R.S. levy was not removed within thirty days after the notice was served.

The problem, however, is with the date of insolvency. The district court found that Blue Water's insolvency after August 5, 1988 was undisputed. However, in order for an act of bankruptcy to have been committed, Blue Water must have "suffered or permitted, *while insolvent,* any creditor to obtain a lien upon any of his property through legal proceedings or distraint." [22] As noted above, the lien on which the government relies to establish their priority under § 3713 is that created pursuant to 26 U.S.C. § 6321 *et seq.* [23] Section 6322 provides that

> [u]nless another date is specifically fixed by law, the lien imposed by section 6321 shall arise *at the time the assessment is made* and shall continue until the liability for the amount so assessed ... is satisfied or becomes unenforceable by reason of lapse of time. [24]

Precedent in this circuit also has recognized that a government tax lien is created at the time the taxes are assessed. [25] In this case, the government, in filing its notice of tax liens, indicates that the date of the first assessment was March 7, 1988, and the date of the final assessment was July 5, 1988. [26] Thus, while the government levy occurred on August 5, 1988, the government's tax lien arose well before that date. The effect of the "distraint" on August 5 was to enforce the previously created lien.

The government must allege and prove insolvency *as of the date when the lien was obtained.* [27] Thus, for example, in *Northwestern Pulp & Paper Co. v. Finish Luth Book Concern,* [28] the Ninth Circuit construed the insolvency requirement in the context of 11 U.S.C. § 21(a). There, the creditor alleged

> that the respondent suffered judgment to be entered against it in favor of the Pacific Coast Credit Association on September 21, 1929; that said judgment was entered on the docket of the circuit court of Clatsop county on September 23, 1929; and that a sale under execution out of said court was had September 3, 1930.
>
> It should be noticed in passing that the amended petition fails to specify that the alleged bankrupt was insolvent *on the date when the alleged preference in the case of the Pacific Coast Credit Association was obtained, i.e., when the judg-*

**21.** *Collier on Bankruptcy,* ¶ 3.08[6], at 471 (citing *In re Timberline Lodge,* 139 F.Supp. 13 (D.C.Ore. 1955)).

**22.** 11 U.S.C. § 21(a)(3).

**23.** In resolving the priority issue, it must be remembered that § 3713 itself does not create a lien in favor of the United States. *Beaston v. Farmers' Bank of Delaware,* 12 Pet (37 U.S.) 102, 133–34, 9 L.Ed. 1017, 1029 (1838).

**24.** 26 U.S.C. § 6322 (emphasis added).

**25.** *See, e.g., United States v. Hickox,* 356 F.2d 969 (5th Cir.1966) ("the government became a lien creditor on November 6, 1959, and on February 24, 1961, when the taxes here involved were assessed") (citing 26 U.S.C. § 6321–22); *Enochs v. Smith,* 359 F.2d 924, 925 (5th Cir.1966) ("Taxes were assessed against Bradley at a time when he owned the properties here in question; upon Bradley's failure to pay the taxes, a lien arose in favor of the Government").

**26.** The government, in filing notice of its tax lien, stated the assessments as follows:

| Tax Period Ended | Date of Assessment | Unpaid Balance of Assessment |
| --- | --- | --- |
| 03–31–87 | 03–07–88 | $ 10,631.59 |
| 06–30–87 | 03–28–88 | 18,128.71 |
| 09–30–87 | 04–04–88 | 44,130.03 |
| 12–31–87 | 06–30–88 | 111,203.17 |
| 03–31–88 | 06–30–88 | 76,009.84 |
| 06–30–88 | 07–05–88 | 83,654.74 |

"Claim in Interpleader," Government Exhibit 1, R1–15.

**27.** *See Collier on Bankruptcy,* ¶ 3.306, at 466 ("Insolvency on the date when the lien was

obtained must be alleged and proved under this act of bankruptcy.").

**28.** 51 F.2d 340 (9th Cir.1931).

*ment was docketed.* Furthermore, the stipulation of counsel, the opinion of the court below, and the narrative statement of evidence all fail to specify the alleged bankrupt's insolvency *at the time that either of the two judgments was obtained.*[29]

On this basis, the court concluded that, notwithstanding the debtor's failure to discharge the judgment prior to sale, the bankruptcy petition was rendered fatally defective by the petitioner's failure to allege the debtor's insolvency at the time the judgment was obtained.[30] Similarly, here, although the debtor Blue Water's failure to discharge the lien within thirty days after the creation of the lien satisfies the "act of bankruptcy" requirement,[31] the district court found that the debtor's insolvency prior to August 5, 1988 had not been established. The government, thus, failed to establish the debtor's insolvency prior to August 5, 1988, i.e., on each of the dates when the government's tax liens arose.

Determination of insolvency as of the date the lien was obtained comports with § 3713's requirement that the government separately allege and prove insolvency *and* commission by the insolvent of an act of bankruptcy. The reference to an act of bankruptcy in § 3713 "is for the purpose of defining one of the ways in which the debtor's insolvency may be manifested."[32] Proof of (1) insolvency when the lien was obtained, (2) the government seizure, and (3) Blue Water's failure to discharge the lien were necessary to make "the [debtor's]

insolvency notorious."[33] We, therefore, hold that it is insufficient, for purposes of § 3713 priority, that the government lien itself rendered the debtor insolvent. Proof of insolvency prior to an act of bankruptcy must be otherwise established.

■ Because, pursuant to § 3713, the taxpayer's insolvency on the date the tax liens were obtained is a material fact in dispute, the United States cannot, given the evidence before the district court on summary judgment, rely on § 3713 to establish absolute priority.[34] We, therefore, hold that the district court erred in granting summary judgment in favor of the United States on the basis of its priority under the insolvency statute, 31 U.S.C. § 3713.

B. Grant of Summary Judgment on Appeal Inappropriate on Record Before the Court

■ On appeal from grant of summary judgment, an appellate court may affirm if the judgment of the district court is correct although the reasons given are erroneous.[35] On reversal of the grant of summary judgment, the court also may order summary judgment for the appellant, particularly when, as here, a cross-motion for summary judgment was made before the district court.[36] However, if a genuine issue of fact exists, or it appears that the party opposing summary judgment on appeal had no "fair 'opportunity to dispute the facts material' to the new theory,"[37] remand is appropriate. This court also has held that

---

**29.** *Id.* at 341–42 (emphasis added).

**30.** *Id.; see also Central Fibre Products Co. v. Hardin,* 82 F.2d 692, 693 (5th Cir.), *cert. denied,* 299 U.S. 547, 57 S.Ct. 10, 81 L.Ed. 402 (1936).

**31.** *In re Flushing Queensboro Laundry,* 90 F.2d 601 (2d Cir.1937); *In re Timberline Lodge,* 139 F.Supp. 13 (D.C.Ore.1955).

**32.** *Bramwell,* 269 U.S. at 490, 46 S.Ct. at 178.

**33.** *Id.* at 492, 46 S.Ct. at 178.

**34.** Because we conclude that § 3713 does not apply, we need not decide whether the "choate lien" exception to § 3713's absolute priority might apply to the Townsend's interest in Blue Water's property. *See* District Court Order, at 7. Neither do we address the possible inconsisten-

cy between 31 U.S.C. § 3713 and 26 U.S.C. § 6321. *See, e.g.,* Note, *Nesbitt v. United States: Denying an Implied Tax Lien Exception to the Federal Priority in Insolvency,* 33 Cath.U.L.Rev. 741 ("Because of this apparent inconsistency in the two statutes, some courts have ruled that the Federal Tax Lien Act created an implied exception to the operation of section 3466 [31 U.S.C. § 3713]").

**35.** *Davis v. Liberty Mut. Ins. Co.,* 525 F.2d 1204 (5th Cir.1976); *Southern Ry. Co. v. State Farm Mut. Auto. Ins. Co.,* 477 F.2d 49 (5th Cir.1973).

**36.** *See Moore's Federal Practice,* ¶ 56.27[1], at 858–59 (2d ed.) (citations omitted).

**37.** *United States v. General Motors Corp.,* 518 F.2d 420, 440–41 (D.C.Cir.1975).

whether to consider a legal issue or theory raised for the first time on appeal is a matter of appellate court discretion.[38] "[W]e will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice."[39]

In granting summary judgment, the district court concluded that the issue of Blue Water's insolvency prior to August 5, 1988, was a disputed fact. Given our disposition on appeal, Blue Water's insolvency is material to determination of § 3713's application and the government's absolute priority. Also, if the district court determines for whatever reason that § 3713 is inapplicable, the question of "first in time" priority under 26 U.S.C. § 6321 *et seq.* becomes an issue requiring factual development.

In vacating the grant of summary judgment and remanding, we intimate no conclusion on the merits of this case.[40] Nor do we suggest that summary judgment will be inappropriate after additional proceedings in the district court. We merely conclude that further proceedings consistent with this opinion are necessary to ascertain the relative priorities of the competing claims.

VACATED and REMANDED.

DUBINA, Circuit Judge, specially concurring:

I concur in the result.

---

**38.** *United States v. Southern Fabricating Co.,* 764 F.2d 780, 781 (11th Cir.1985) (citing *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826, 837 (1976)).

**39.** *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.,* 689 F.2d 982, 989 (11th Cir.1982).

**40.** The court understands the taxes involved here to be employee withholding taxes. We are puzzled why the government in this lawsuit has not cross-claimed to seek relief under 26 U.S.C. §§ 7501 and 6672.