[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 21-10641
Non-Argument Calendar

————————————————

D.C. Docket No. 1:19-cv-2915-SDG

TIFFANY SNADON,

Plaintiff - Appellant,

versus

SEW-EURODRIVE, INC.,
VINION L. ROBINSON, JR., et al.,

Defendants - Appellees.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

(September 24, 2021)

Before JILL PRYOR, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

This appeal involves a personal injury claim by Tiffany Snadon, who worked

for an independent contractor, against SEW-Eurodrive, Inc., her employer's client.

Snadon appeals the district court's denial of her motion for leave to amend her complaint, arguing that the exigencies of the COVID-19 pandemic satisfy the "good cause" requirement in Federal Rules of Civil Procedure 16(b). She also appeals the district court's grant of summary judgment to SEW, arguing that genuine issues of material fact remained for a jury to decide. After careful consideration, we affirm.

## I.

Snadon worked for Nth Degree, a contractor hired by SEW to assemble a truss structure for its exhibit at a tradeshow in Atlanta. Joseph Tetzel, a representative of SEW, supervised the assembly process and provided some equipment and plans. In particular, SEW provided a specialized metal tool that would be used to assemble the structure. While Nth Degree's team was raising the structure, the metal tool fell off the structure, striking Snadon's head and injuring her.

Snadon sued SEW and others for damages under a general negligence theory. More than seven months after the deadline set by the district court's scheduling order, Snadon sought leave to amend her complaint by adding a claim under a premises-liability theory of negligence. The district court denied her motion, reasoning that she had not shown good cause under Federal Rules of Civil Procedure 16(b). SEW also filed a motion seeking summary judgment on the general negligence claim, which the district court granted.

Snadon timely appealed both the grant of summary judgment and the denial of her motion for leave to amend her complaint.

## II.

## A.

We turn first to the denial of Snadon's motion for leave to amend her complaint. Where a district court denies leave to amend a complaint after a party's failure follow a scheduling order, we review its decision for abuse of discretion. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998). When such a motion is filed after the deadline in the district court's scheduling order, the movant must first demonstrate "good cause why leave to amend the complaint should be granted." Fed. R. Civ. P. 16(b); *Sosa*, 133 F.3d at 1419. "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa*, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note). A party's diligence can be determined by its attempts to gather relevant information during discovery, the timing of when the information became available, and how soon the party moved to amend after discovering the information. *Id.* at 1419.

Here, the district court's scheduling order set September 2, 2019, as the deadline for amendments to pleadings. But Snadon sought to amend her complaint over seven months later, on April 22, 2020. Snadon argues that the district court

3

abused its discretion by denying her motion because "real-world circumstances" surrounding the COVID-19 pandemic "moot[ed] the whole point" of Rule 16(b). Yet the information supporting her proposed amendment was available more than eighteen months earlier, before the pandemic was underway. This unnecessary delay demonstrates a lack of diligence by Snadon, so the district court did not abuse its discretion by denying her motion.

**B.**

Next, we turn to the district court's summary judgment. "We review the district court's grant of summary judgment *de novo*, applying the same legal standards that bound the district court, and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (quoting *Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1382 (11th Cir. 2005)). Summary judgment is appropriate where the available evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)). "On appeal from grant of summary judgment, an appellate court may affirm if the judgment of the district court is correct although the reasons given are erroneous." *Jonathan's Landing, Inc. v. Townsend*, 960 F.2d 1538, 1545 (11th Cir. 1992). Where, as here, we sit in diversity jurisdiction,

we apply the substantive law of the state. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Snadon brought a general Georgia-law negligence claim against SEW. Snadon argues that the district court erred in granting summary judgment on that claim because SEW owed her a duty to supervise the truss construction and negligently allowed the tool to remain on the truss structure while it was being lifted. SEW argues, and the district court concluded, that it had no duty under Georgia law to supervise its independent contractor and did not commit any negligent act itself for which it could be held liable.

We agree with SEW and the district court. Under Georgia law, an "independent contractor's employer is under no duty to take affirmative steps to guard or protect the contractor's employees against the consequences of the contractor's negligence or to provide for their safety." *Murphy v. Blue Bird Body Co.*, 429 S.E.2d 530, 533 (Ga. Ct. App. 1993); *see also* Ga. Code Ann. § 51-2-4. Instead, the employer "owes the contractor's employees . . . the ubiquitous duty of not imperiling their lives by its own *affirmative acts of negligence.*" *Id.* (cleaned up) (emphasis added). Here, SEW affirmatively provided the tool that its contractor needed, but this action was not negligent. As SEW rightly puts it, "there is no suggestion that the tool itself was defective, and no credible argument that giving the tool to Nth Degree proximately caused Snadon's alleged accident." Instead, if

5

there was a negligent act, it was the act of lifting the structure while the tool was still on it. And Nth Degree, not SEW, performed that work.

Snadon argues that, under Section 324A of the Restatement (Second) of Torts, SEW assumed a duty to supervise the installation by sending Tetzel to monitor the exhibit assembly. Assuming without deciding that Georgia courts would follow this provision of the Restatement, Section 324A liability applies only to "[o]ne who undertakes . . . to render services to another which he should recognize as necessary for the protection of a third person or his things." Restatement (Second) of Torts § 324A. But Tetzel's supervision here was not "necessary for the protection" of Snadon or her fellow laborers. His job was to inspect the contractor's work and ensure that it "comport[ed] with SEW-Eurodrive's vision" for the exhibit. As such, Teztel never engaged in the type of undertaking that would implicate a duty under Section 324A.

Snadon contends that Tetzel's testimony about his supervisory role was "self-serving" and that a jury could find that his role was broader. But even disregarding Tetzel's testimony and relying solely on Snadon's account, there is still no basis to conclude that Tetzel exerted sufficient control to make SEW responsible for safety on the worksite. For a supervisor to exert such control, "[i]t is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not

6

necessarily be followed, or to prescribe alterations and deviations." *McLaine v. McLeod*, 661 S.E.2d 695, 699 (Ga. Ct. App. 2008) (citing *Slater v. Canal Wood Corp. of Augusta*, 345 S.E.2d 71, 74 (Ga. Ct. App. 1986)). Rather, "[t]here must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." *Id.* According to Snadon, Tetzel supplied some equipment and explained the planned "layout" of the structure. As the work progressed, he also checked that the fastening pins were connected before the workers began the next part of the structure. Snadon said that Tetzel was "hands-on" during this process. But Tetzel did not control the process beyond providing some equipment and plans and checking the soundness of the structure as it was assembled. No reasonable jury could conclude that SEW exerted sufficient control to have assumed responsibility for the safety of the employees of its independent contractor.

Snadon also attempts to identify a duty in two contracts, but neither imposed a duty on SEW to ensure the safety of its independent contractor's employees. First, Snadon points to the agreement between SEW and MHI (the organization hosting the tradeshow). That contract stated that SEW "is solely responsible for personal injuries . . . to any person . . . including . . . . the agents, or employees of [SEW] . . . that in any manner relate to [SEW's] booth, its design, construction, safety, or operation and its exhibit." But neither Snadon nor her employer were parties to that contract. And Snadon was not an intended beneficiary because the assignment of

7

liability was not intended "directly for [her] benefit." *See Archer W. Contractors, Ltd. v. Est. of Pitts*, 735 S.E.2d 772, 779 (Ga. 2012). Instead, this contract language merely insulates Modex against liability related to SEW's exhibit. Second, Snadon asserts that SEW contracted to ensure the safety of the exhibit assembly by declining an offer from Nth Degree to provide an on-site supervisor. When Nth Degree sent that offer by email, SEW responded, "No supervision. We always have our guy supervising." This refusal cannot reasonably be construed as an assent to a contract. *Cf. Mitchell v. Georgia Dep't of Cmty. Health*, 635 S.E.2d 798, 805 (Ga. Ct. App. 2006) (discussing the elements to a valid contract). Thus, there was no genuine issue of material fact concerning contractual duties owed to Snadon by SEW.

Finally, Snadon broadly asserts that the district court failed to view the evidence in the light most favorable to her. Even if that were true, her arguments still fail for the reasons discussed above. *See Jonathan's Landing, Inc.*, 960 F.2d at 1545; 28 U.S.C.A. § 2111.

## III.

The district court's judgment is **AFFIRMED.**